**CHROMALLOY AMERICAN CORPORATION, Appellant,**

v.

**KENNETH GORDON (NEW ORLEANS), LTD., Appellee.**

**Appeal No. 83–1396.**

United States Court of Appeals, Federal Circuit.

June 8, 1984.

Lewis F. Gould, Jr., Philadelphia, Pa., argued for appellant. With him on the brief was Eric S. Marzluf, Philadelphia, Pa.

Norm D. St. Landau, Washington, D.C., argued for appellee. With him on the brief was Henry W. Leeds, Washington, D.C.

Before SMITH, Circuit Judge, SKELTON, Senior Circuit Judge, and NIES, Circuit Judge.

NIES, Circuit Judge.

This appeal is from a decision of the Trademark Trial and Appeal Board of the Patent and Trademark Office, adhered to on reconsideration, granting summary judgment in favor of the applicant, Kenneth Gordon (New Orleans), Ltd., (KGL) in Opposition No. 66,734. Chromalloy American Corporation opposed registration of the mark LADY GORDON for various items of clothing, as set forth in the opposed application,[1] based on its prior rights in the trademarks GORDON and GORDON in various combinations for the same type of goods. The board held that on the basis of a consent judgment entered in a civil action between the parties, Chromalloy was expressly barred from challenging KGL's right to register LADY GORDON. We *reverse* and *remand* for a determination on the merits.

## Background

Appellant in this proceeding is the opposer, Chromalloy American Corporation, which seeks to prevent registration of the trademark LADY GORDON for a line of women's apparel. As grounds for opposition, Chromalloy asserts that it has continuously used the trademark GORDON, alone and in combinations, for such garments since at least as early as 1953. Chromalloy's rights are evidenced by a number of registrations. Particularly pertinent are Registration No. 1,133,172, issued April 15, 1980, for the mark GORDON for women's and girls' sportswear, namely, shirts, pants and sport tops and Registration No. 862,024 issued December 17, 1968 for GORDON OF PHILADELPHIA & Design ("Philadelphia" disclaimed) for men's and women's suits, coats, jackets, shirts, blouses, and sweaters. The opposition is based on asserted likelihood of confusion between Chromalloy's prior GORDON marks and the mark LADY GORDON for identical and closely related goods for which KGL seeks registration.

In response to the notice of opposition, KGL filed a motion for summary judgment on the basis of a consent judgment entered in prior litigation between the parties. KGL asserted that:

> Applicant's right to use and register LADY GORDON is governed by the aforementioned Consent Judgment, which is binding on both parties and

1. Application Serial No. 278,030 filed September 15, 1980 for "ladies' knit shirts, knit dresses, sweaters, sport coats, skirts, suits, shirts, dress-es, shorts, trousers, neck wear, belts, scarves, and hats" claiming first use in April 1976.

which prohibits Opposer from prosecuting this opposition.

On the basis of the judgment, KGL asserted it was entitled to judgment in the opposition as a matter of law.

The pertinent portions of the consent judgment are the following:

2. Defendant, Gordon of New Orleans, Inc. (hereinafter "Defendant Gordon"), shall within sixty (60) days of the entry of judgment change its corporate name. The new name may include "Gordon" provided that it is prefixed by another term of equal prominence and of four or more letters, for example, "Kenneth Gordon." Nothing herein shall prevent Defendant, Gordon from incorporating "New Orleans" in its corporate name to fairly describe its geographic origin as long as the word "of" does not precede "New Orleans" and "New Orleans" appears in parenthesis as follows: "Kenneth Gordon (New Orleans) Ltd.".

3. Subject to paragraphs 2 and 6, Defendant Gordon is enjoined from the continued use of the tradename "Gordon of New Orleans, Inc." as well as of GORDON as a trademark such as shown on the attached Exhibit A displaying Defendant Gordon's current basic label (Exhibit A–1), its current combination store label (Exhibit A–2, and its current content and tie label (Exhibit A–3).

4. Nothing in paragraph 3, hereof, shall prevent Defendant Gordon from using and registering throughout the world as its trademark or service mark the term GORDON with another term of four or more letters, provided that each term of the composite mark is displayed in letters of equal prominence, style, color and type, and further provided that the additional term is not geographically descriptive. Examples of composite GORDON marks permitted to be used and registered under this paragraph are shown on attached Exhibit B.

\* \* \* \* \* \*

10. The Complaint and Counterclaims filed herein are dismissed with prejudice as to all counts for any and all purposes

except that the Court retains jurisdiction to enforce the provisions of this decree.

Rejecting Chromalloy's position that the decree limited KGL to use and registration of KENNETH GORDON, the board held:

On the basis of the consent judgment, there can be no doubt that opposer is expressly barred from challenging applicant's right to register LADY GORDON. See: *Danskin, Inc. v. Dan River, Inc.,* 498 F.2d 1386 (CCPA 1974) and *Coldgate [sic]-Palmolive Co. v. S.C. Johnson and Sons, Inc.,* 159 USPQ 56 (TTAB 1968).

### Discussion

The board made no holding on the issue of likelihood of confusion between the marks GORDON and LADY GORDON for identical goods. Rather, it treated the consent judgment as dispositive of the case as a matter of law. This was legal error. Secondly, it misinterpreted the terms of the decree, also an error of law.

### I.

█ KGL argues that the board correctly granted its motion for summary judgment "based on the law of res judicata." Since the board did rely on the preclusive effect of the judgment, this appears to be the basis for its decision. However, under none of the concepts of res judicata, does the consent decree operate as a bar to the present opposition to the mark LADY GORDON.

In *The Young Engineers v. U.S. International Trade Commission,* 721 F.2d 1305, 219 USPQ 1142 (Fed.Cir.1983), this court stated that it would be guided by the *Restatement (Second) of Judgments* (1982) in analyzing what preclusive effect should be given a judgment in subsequent litigation. In the introductory note to section 13, the *Restatement* provides the following basic statement:

The principal concepts developed in this Chapter are: merger—the *extinguishment of a claim* in a judgment for plaintiff (§ 18); bar—the *extinguishment of a claim* in a judgment for de-

fendant (§ 19); and *issue preclusion* —the effect of the determination of an issue in another action between the parties on the same claim (direct estoppel) or a different claim (collateral estoppel) (§ 27). The term "res judicata" is here used in a broad sense as including all three of these concepts.. When it is stated that "the rules of res judicata are appalicable," it is meant that the rules as to the effect of a judgment as a merger or a bar or as a collateral or direct estoppel are applicable. (Emphasis added).

█ The starting place for any analysis of res judicata is, thus, to determine whether the party raising the issue is asserting "claim" preclusion or "issue" preclusion.

As stated in *Young Engineers*, 721 F.2d at 1314, 219 USPQ at 1151:

* * * [I]ssue preclusion operates only as to issues actually litigated, whereas claim preclusion may operate between the parties simply by virtue of the final judgment. Thus, principles of merger and bar may apply even though a judgment results by default, consent, or dismissal with prejudice although care must be taken to insure the fairness in doing so. 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure §§ 4419, 4442, 4443 (1981).

In this case, no issues were actually litigated in the prior suit. Thus, no "issue" can be said to have been determined or precluded. Therefore, if res judicata applies, it can only rest on principles of claim preclusion.

█ Similarly in this case, no issues were actually litigated in the civil action, that is, no issues were judicially resolved following a trial. See *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1570, 221 USPQ 394, 397 (Fed.Cir. 1983). Thus, if res judicata applies, it must rest on principles of "claim" preclusion. In this case, whether Chromalloy's present claim against KGL was merged into or barred by the judgment in the civil action depends upon whether Chromalloy is again asserting the same "claim".

The concept of a "claim" is described in § 24 of the *Restatement* as follows:

§ 24. Dimensions of "Claim" for Purposes of Merger or Bar—General Rule Concerning "Splitting"

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (*see* §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction," and what grouping constitutes a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Turning to the pleadings in the civil action, it is clear that Chromalloy's claim therein is a different claim from the one before the board. The only issue of likelihood of confusion raised in the prior suit was as follows:

In view of the identity between plaintiff's GORDON, GORDON–FORD, and GORDON OF PHILADELPHIA & Design trademarks as used with men's and women's apparel and sportswear, and defendants' GORDON OF NEW ORLEANS mark as used with men's and women's apparel and sportswear, the trade, consumers and the purchasing public will be likely to be confused and will be justified in being confused, and, in fact, actually have been confused, that defendants' men's and women's apparel and sportswear originate from plaintiff.

In this opposition, Chromalloy pleads likelihood of confusion arising from KGL's use of LADY GORDON. That a claim against LADY GORDON could have been permissibly joined in the civil action (had Chromalloy been aware at that time of

KGL's use of LADY GORDON [2]) does not mean Chromalloy *split* a single claim. The claim against LADY GORDON is simply not the same claim as one against GORDON OF NEW ORLEANS. The "transactional facts" are different in that a different mark used over a different period of time is involved. Chromalloy's claim involving LADY GORDON was, accordingly, not extinguishable by the prior judgment under principles of res judicata.[3]

## II.

■ The above analysis does not, however, end the inquiry. Rather, it leads us to the wholly distinct issue: Do the terms of the decree provide a contractual consent by Chromalloy to KGL's registration of LADY GORDON?

Regarding this issue, KGL urged and the board agreed, that by paragraph 4 Chromalloy consented to KGL's use and registration of all four letter GORDON combinations except for combinations with a geographic name or in certain displays. Such an interpretation is patently unreasonable. Under this reading of the agreement, KGL would have the right to use and register GORDON–FORD, a registered mark of Chromalloy asserted in the lawsuit, to which KGL concedes it acquired no rights under the agreement.

In any event, we cannot agree that by paragraph 4 of the decree, Chromalloy gave its consent to KGL's use and registration of LADY GORDON. The board interpreted paragraph 4 as if it read, "Nothing shall prevent [KGL] from using and registering [certain GORDON marks]," whereas paragraph 4 is tied to paragraph 3, a condition which the board and appellee wholly failed to take into account. Specifically,

paragraph 4 begins: "Nothing *in paragraph 3,* hereof, shall prevent [KGL] from using and registering [certain marks]." By paragraph 3 KGL agreed to be enjoined from using specific marks. In the absence of paragraph 4, Chromalloy not only could bring a separate suit for infringement of its rights by KGL's use of other GORDON marks but might also be able to obtain relief in a contempt proceeding, a much faster and more powerful remedy. It is familiar practice to assert that an enjoined infringer is seeking to evade the force of an injunction by adopting a variation of a specifically prohibited mark.

Paragraph 4, thus, benefits KGL by placing certain GORDON combinations, e.g., GORDON with a four letter non-geographic term, clearly outside the force of the injunction KGL accepted in paragraph 3. However, the quoted language of paragraph 4 does not prevent Chromalloy from asserting likelihood of confusion in KGL's use of such combinations. It merely prevents Chromalloy from asserting that KGL's right to use such a composite mark is barred by the decree. Rather than resolving the issue of likelihood of confusion with respect to such marks, the issue is left open except with respect to the trade name and mark KENNETH GORDON, to which KGL obtained a clear concession, considering the decree as a whole.

While the decree is not a model of clarity, given the issues before the court in the civil action, we conclude without any equivocation that no consent was given by Chromalloy to KGL's use or registration of the subject mark, LADY GORDON for women's clothing.[4]

## REVERSED and REMANDED.

**2.** KGL was using LADY GORDON at the time of the lawsuit but admittedly did not disclose such use to Chromalloy. Nor did KGL advise the court whose order it now attempts to invoke with respect to this matter, which raises a serious question of the bona fides of KGL's conduct.

**3.** Another significant factual difference is the subsequent issuance to Chromalloy, after the suit, of Registration No. 1,133,172 for the mark GORDON *per se* covering women's sportswear.

. That, in itself, presents a different question to the board from the controversy before the court in view of the statutory prohibition against registration of "a mark which so resembles a mark registered in the Patent and Trademark Office ... as to be likely ... to cause confusion." 15 U.S.C. 1052(d).

**4.** The author adds the personal comment that unless the principles of res judicata discussed above apply, a consent given in a decree should be treated as any other contractual consent. A

consent cannot *dictate* the decision which the PTO must make on the issue of likelihood of confusion. It is simply a factor to be taken into consideration. *In re E.I. DuPont deNemours,* 476 F.2d 1357, 1362, 117 USPQ 563, 568 (CCPA 1973); *In re Continental Baking Co.,* 390 F.2d 747, 156 USPQ 514 (CCPA 1968); accord, *Selva & Sons, Inc. v. Nina Footwear, Inc.,* 705 F.2d 1316, 1324, 217 USPQ 641, 647 (Fed.Cir.1983). Regardless of what private arrangement may exist between parties, no one has a right to a registration contrary to the statute. *Danskin, Inc. v. Dan River, Inc.,* 498 F.2d 1386, 182 USPQ 370 (CCPA 1974), relied on by appellant, did not overrule this general principle.