5 USPQ 2d 1580 (TTAB 1987)

F170
VOLT

Hearing:
May 19, 1987

G. Smith
Paper No. 53

**FOR PUBLICATION IN FULL**

U. S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

Flowers Industries , Inc.
v.
Interstate Brands Corporation

Opposition No. 70,572 to application Serial No. 435,786,
filed July 22, 1983

Julius R. Lunsford, Jr. and Jones, Askew & Lunsford for Flowers
Industries, Inc.

Schmidt, Johnson, Hovey & Williams for Interstate Brands
Corporation.

Before Sams, Rice and Krugman, Members.

Opinion by Rice, Member:

An application has been filed by Interstate Brands
Corporation for a concurrent use registration of the
designation "HONEY WHEAT" for bread,[1] use since at least as
early as 1936 being asserted. Applicant seeks registration,
upon the Principal Register under the provisions of Section
2(f) of the Trademark Act of 1946, 15 U.S.C. 1052(f),[2] for
the area comprising the States of Alabama, Arizona, Arkansas,
California, Colorado, Florida, Georgia, Idaho, Illinois, Iowa,

[1] Serial No. 435,786, filed July 22, 1983.
[2] The claim to distinctiveness under Section 2(f) is based
upon an allegation of substantially exclusive and continuous
use in commerce in applicant's specified area for the five
years next preceding the filing date of the application.

Kansas, Kentucky, Louisiana, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, Nevada, North Carolina, North Dakota, Oklahoma, Oregon, South Dakota, South Carolina, Tennessee, Texas, Utah, Washington, Wisconsin, and Wyoming. Recited as an exception to applicant's right to exclusive use is Stroehmann Brothers Company, said by applicant to have been using the designation "HONEY CRUSHED WHEAT" for bread, since September of 1937, in the States of Connecticut, Delaware, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Vermont, Virginia, and West Virginia.

Registration has been opposed by Flowers Industries, Inc. essentially on the ground that "HONEY WHEAT" is merely descriptive of a type of bread and related goods; that since at least as early as February 1, 1979, opposer has used the designation "HONEY WHEAT ENRICHED BREAD" to describe a type of bread which it sells in the states of Tennessee, South Carolina, Virginia, West Virginia, Georgia, Florida, Alabama, Louisiana and Texas; that applicant has never voiced any objection to opposer's said use; that applicant has acquiesced in, approved of, and consented to opposer's said use; that in addition to Stroehmann Brothers Company, the concurrent user listed in applicant's application, numerous other companies have used and are using the designation "HONEY WHEAT" to describe English muffins, bread, donuts, tortillas, dough, and

2

other bakery products; that because of the use of the designation "HONEY WHEAT" and similar terms by opposer and others for many years, the designation has not become distinctive of applicant's goods and cannot serve as an indication of the source of such goods; and that the issuance of the registration sought by applicant would interfere with opposer's right to continue to use the designation "HONEY WHEAT" to describe its bread.

Applicant, in its answer to the notice of opposition, has admitted that it has never voiced any objection to opposer's use of the designation "HONEY WHEAT", but has denied the remainder of the salient allegations contained therein.

The record consists of the pleadings; the file of applicant's involved registration; each party's answers, with exhibits, to the interrogatories propounded by the other;(3) copies of portions of certain publications, made of record by opposer pursuant to Trademark Rule 2.122(e); copies of third-party registrations and of certain state registrations issued to applicant, made of record by applicant under the same rule; a stipulation of facts, with references back to certain exhibits to affidavits previously submitted by opposer in connection with its motion for summary judgment (see footnote

---

(3) Incorporated as part of opposer's answer to applicant's interrogatory 24 were nine affidavits, with attached exhibits, previously submitted by opposer in connection with its motion for summary judgment (which was denied by the Board as untimely because it was not filed until after the commencement of opposer's testimony period).

3

3); and testimony, with exhibits, in behalf of each party.(4)

(4) During the testimony deposition of Mr. Cliff Whitehead, a brand manager in opposer's Baked Foods Division, opposer offered into evidence what it referred to as a "survey." Applicant objected to introduction of the "survey" on the ground that it constituted hearsay evidence. The record shows that in a letter dated March 13, 1986, Mr. George Deese, the president of opposer's Bakery Division, asked each of opposer's plant managers to purchase in their local markets any food products bearing the term "Honey Wheat" on the primary display panel of the package label. The letter indicated that the requested evidence was needed for use in connection with this proceeding. Twenty-six of the managers responded by submitting the packages for purchased products, plus a completed form listing, for each product purchased, the product name, the name of its "Parent Company," the name of the store where it was purchased, the "Market (City)" in which it was purchased, and the date and time of the purchase. Although surveys which are conducted in accordance with accepted principles of survey research, and are properly introduced, are admissible as evidence in proceedings such as this [see: J. Thomas McCarthy, Trademarks and Unfair Competition, §§ 32:46 - 32:55, pages 765 - 791 (2d ed. 1984); Handbook of Recommended Procedures for the Trial of Protracted Cases, adopted by the Judicial Conference of the United States, 25 F.R.D. 351, 425-430 (1960); Tony Lama Co., Inc. v. Anthony Di Stefano, 206 USPQ 176 (TTAB 1980); and Finance Company of America v. BankAmerica Corp., 205 UPSQ 1016 (TTAB 1979, as amended 1980), affirmed in unpublished opinion, Appeal No. 80-558 (CCPA February 12, 1981)], manifestly this is not such a survey. Nor does it qualify as a business record within the meaning of Rule 803(6) of the Federal Rules of Evidence, because it was generated specifically for use in connection with this proceeding. Accordingly, applicant's objection is well taken, and the "survey evidence" has not been considered in our determination of this case.

Opposer's evidentiary record contains other hearsay evidence as well, including letters from employees of third-party companies providing information about their companies' use of the term "HONEY WHEAT"; and copies of printouts from the "Foods Adlibra" database of Dialog Information Services, which are hearsay when offered to prove the truth of the matters asserted therein (i.e., to prove, for example, that "Bridgeford Foods has frozen rolls in retail markets in three varieties - white, honey wheat and French flavors." Applicant did not raise a hearsay objection to this evidence, neither did it dispute, either in its brief or at oral hearing, the list in opposer's brief of 24 entities, said Footnote 4 continued on page 5.

4

We note at the outset that this application represents a second attempt to register the designation "HONEY WHEAT" for bread. The first attempt was made by a predecessor of applicant approximately forty years ago. As in the present case, registration was sought on the Principal Register under the provisions of Section 2(f). Registration was refused by the Examining Attorney in charge of the application on the asserted ground that "... the words 'Honey Wheat' are incapable of distinguishing the applicant's goods from goods of others in commerce for the reason that the words are merely a reference to the type of bread which the applicant sells,..." On appeal, the refusal to register was affirmed, essentially for the reasons stated below:

> It is my view that the applicant has adopted as its trade mark an expression which unquestionably indicates the nature and the principal ingredients of its goods, namely, wheat bread which contains honey... Certainly the word "wheat" as applied to bread indicates a type of bread, namely, "wheat bread" as distinguished from "rye bread", and the

Footnote 4 continued.
by opposer to be using "HONEY WHEAT" as a descriptive designation for bread products, which list was based in part on the hearsay evidence. Under the circumstances, we have not excluded this evidence, but we have considered its hearsay nature in weighing its probative value, and hence have given it very little weight. In any event, even if all of the hearsay evidence were entirely excluded, the remaining evidence herein would nevertheless lead us overwhelmingly to the same ultimate conclusion. In point of fact, the hearsay evidence plays little or no role in our recitation of the facts above.

word "honey" has but one obvious
significance, namely, to further indicate
that the bread contains honey, as the
label clearly indicates. The showing made
in this case is considered insufficient to
overcome the rejection made, and it is
therefore my conclusion that the refusal
to register the applicant's mark was
proper....

See: Ex parte Interstate Bakeries Corp., 91 USPQ 340, at 341

(Comr 1951). No further appeal was taken by applicant's

predecessor.

Opposer argues that the prior decision serves as a

bar, under the doctrines of res judicata, collateral estoppel,

and/or stare decisis, to the registration sought by applicant

herein.(5) Applicant, on the other hand, takes a contrary

position.

Under the doctrine of claim preclusion (or res

judicata), the entry of a final judgment "on the merits" of a

claim (or cause of action) in a proceeding serves to preclude

the relitigation of the same claim in a subsequent proceeding

involving the same parties or their privies, even when the

prior judgment resulted from default, consent, or dismissal

---

(5) The Board, in an action mailed May 6, 1986, denied
opposer's motion for reconsideration of the Board's decision of
February 27, 1986, wherein the Board denied opposer's motion
for summary judgment as untimely. In denying the motion for
reconsideration, the Board adhered to its determination that
the motion was untimely filed and noted additionally, with
respect to that part of opposer's motion for summary judgment
pertaining to res judicata and/or collateral estoppel, that
Footnote 5 continued on page 7.

with prejudice. See: Lawlor v. National Screen Service Corp., 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955), and Chromalloy American Corp. v. Kenneth Gordon, Ltd., 736 F.2d 694, 222 USPQ 187 (CAFC 1984). Inasmuch as there has been no assertion by opposer (or a privy), in a prior proceeding against applicant (or a privy), of the same claim asserted herein, much less a final judgment thereon (indeed, there has been no prior proceeding between the parties or their privies at all), the principles of claim preclusion are not applicable in this case.

The doctrine of issue preclusion (or collateral estoppel) operates to preclude the relitigation, by the same parties or their privies, of issues actually litigated, and necessarily determined (by a court of competent jurisdiction), in a prior proceeding, whether or not the prior proceeding involved the same claim as the subsequent proceeding. See: Lawlor v. National Screen Service Corp., supra; Chromalloy American Corp. v. Kenneth Gordon, Ltd., supra; and International Order of Job's Daughters v. Lindeburg & Co., 727 F.2d 1087, 220 USPQ 1017 (CAFC 1984).

In a recent opposition proceeding, the Board accorded preclusive effect, under the doctrine of collateral estoppel,

Footnote 5 continued.

"opposer has not pleaded res judicata or collateral estoppel in the notice of opposition and a party is not entitled to judgment on a non-pleaded ground." That statement was in error, because res judicata and collateral estoppel are not, in and of themselves, grounds for opposition. Rather, they are legal rules which serve to preclude, in appropriate cases, the relitigation of matters previously litigated.

7

to a prior final judgment which arose out of an ex parte, rather than an inter partes, proceeding. See: Lukens Inc. v. Vesper Corp., 1 USPQ2d 1299 (TTAB 1986), affirmed in unpublished opinion, Appeal No. 87-1187 (CAFC September 18, 1987). The applicant in that case had been the owner of a prior application to register a particular steel plate configuration on the Supplemental Register. Registration had been finally refused by the Trademark Examining Attorney on the ground that the configuration was functional. The refusal to register was affirmed, on appeal, by the Patent Office Examiner in Chief (the predecessor to the Trademark Trial and Appeal Board), who held that the primary purpose of the design was utilitarian, and that it must be characterized as functional [see Ex parte Alan Wood Steel Co., 101 USPQ 209 (1954)]. Applicant appealed that decision by filing a civil action against the Commissioner of Patents in the United States District Court for the District of Columbia. After a trial, that Court affirmed the decision of the Examiner in Chief [see Alan Wood Steel Co. v. Watson, 150 F.Supp. 861, 113 USPQ 209 (1954)]. No further appeal was taken by the applicant. However, in 1978, the applicant filed a new application to register the same configuration under the provisions of Section 2(f) of the Trademark Act of 1946. In due course, the application was published, and was opposed on the ground that the mark was a functional configuration incapable of serving as a trademark. Opposer also asserted that applicant was barred

8

under the doctrine of res judicata from registering its
configuration. Thereafter, the opposer moved for summary
judgment, asserting that applicant was collaterally estopped,
by the final judgment on its prior application, from
registering its mark. The Board granted the motion, according
collateral estoppel effect to the prior judgment
notwithstanding the fact that the judgment arose out of an ex
parte, rather than an inter partes, proceeding. The decision
of the Board hinged upon the fact that in the earlier
proceeding, the applicant's right to registration was litigated
in a trial before a federal district court. Specifically, the
Board stated, in Lukens Inc. v. Vesper Corp., supra, at page
1302:

> In sum, the Board believes that the earlier
> proceedings were of the quality and breadth
> such that applicant had a full and fair
> opportunity to be heard on the issue of
> functionality. In this case, it is
> especially noteworthy that applicant sought
> judicial review by civil action of the
> Examiner-in-Chief's decision. Applicant,
> by appealing to the District Court, was
> entitled to a de novo hearing at which it
> had the opportunity to introduce additional
> evidence not before the Office. See J.
> McCarthy, Trademarks and Unfair
> Competition, Section 21:5 (1984). The fact
> that applicant sought judicial review by
> civil action weighs heavily in favor of our
> application of issue preclusion herein.
> See EZ Loader Boat Trailers, Inc., 746 F.2d
> 375, 223 USPQ 1101 (7th Cir. 1984).
> Applicant thus had the opportunity at trial
> before the District Court to offer new
> evidence. In fact, applicant apparently
> availed itself of this opportunity inasmuch

9

as the Court considered evidence that was developed "at the trial."

The predecessor of the applicant in the present case, on the other hand, did not seek judicial review of the Commissioner's decision by way of a civil action before federal district court. Just as the prior resort to such a trial in the Lukens case weighed heavily in favor of the application of issue preclusion, the absence of a prior resort to such a trial in the present case weighs heavily against the application of issue preclusion. In sum, we do not believe that the circumstances in this case are of such nature as to warrant a ruling that applicant is barred under the doctrine of issue preclusion from relitigating herein its right to register the designation "HONEY WHEAT".

Turning then to stare decisis, that doctrine is defined in Black's Law Dictionary (Fifth Ed. 1979), at page 1261, as follows:

> Doctrine that, when court has once laid down a principle of law as applicable to a certain state of facts, it will adhere to that principle, and apply it to all future cases, where facts are substantially the same; regardless of whether the parties and property are the same. Horne v. Moody, Tex.Civ.App., 146 S.W.2d 505, 509, 510.

10

Because of the requirement that the facts be substantially the same, an applicant who has received an adverse judicial determination of its right to registration, in an ex parte proceeding not involving an appeal by way of a civil action before a federal district court, is not precluded thereby from seeking registration in a second application if the applicant can show that there has been a substantial change in the relevant facts since the rendering of the adverse final decision in its first application. See, for example: In re Oscar Meyer & Co., Inc., 171 USPQ 571 (TTAB 1971). Cf. In re Orion Research Inc., 669 F.2d 689, 205 USPQ 688 (CCPA 1980).

In the present case, applicant's application was filed (as was its predecessor's) under the provisions of Section 2(f) based upon a claim of distinctiveness, and just over forty years have elapsed since the filing of the predecessor's application. Thus, applicant now has used the designation sought to be registered for more than fifty years, whereas applicant's predecessor apparently had used the designation for approximately ten years at the time of the filing of its application. It is obvious that the facts relating to applicant's right to registration are not substantially the same as they were at the time when its predecessor's application was under consideration, and that the prior decision is not conclusive in this case.

11

For the foregoing reasons, we conclude that the prior decision of the Commissioner with respect to applicant's predecessor's application does not serve as a bar, under the doctrines of res judicata, collateral estoppel, and/or stare decisis, to the registration sought by applicant herein.

This brings us to the principal issue in this case, namely, whether opposer has shown by a preponderance of the evidence that the designation "HONEY WHEAT" has not become distinctive of applicant's goods in commerce. Cf. Sunbeam Corp. v. Battle Creek Equipment Co., 216 USPQ 1101 (TTAB 1982).

The evidence made of record by applicant is sufficient to persuade us that applicant, through its predecessors, has used the designation "HONEY WHEAT" in connection with bread since 1936, and that from 1977 until August of 1986, applicant sold more than 40,000,000 loaves of bread bearing the designation. Applicant's gross revenues from sales of such bread totalled over $18,000,000 for the period 1980 through 1985. Applicant's total advertising expenditures for bread bearing the designation "HONEY WHEAT" during the same period amounted to $28,000, all of which was spent for newspaper advertisements run in 1984 in Cleveland, Ohio; Peoria, Illinois; and Milwaukee, Wisconsin. There is also evidence of some newspaper advertising of such bread in Milwaukee in 1953.

12

The bread sold by applicant bearing the designation "HONEY WHEAT" contains both honey and wheat as ingredients, and applicant has stated in its answer to opposer's interrogatory No. 50 (which inquires as to the primary meaning of the words "HONEY WHEAT") that the words refer to the ingredients of the bread. In the same vein, one of applicant's witnesses, Mr. Leo Edward LaFauce, an executive vice president of applicant who retired on December 31, 1985 after 40 years of service with the company, testified that "HONEY WHEAT" is a variety bread. His testimony on this point, at page 34 of his deposition, is as follows:

XQ. 24    Is it correct to characterize or
          classify Honey Wheat as a variety
          of bread, Mr. LaFauce?

A.        In many instances, it certainly is.

XQ. 25    Being in the same category with
          Dixie rye or white bread or other
          varieties?

A.        Well, it would not be in the same
          category as white bread, but
          certainly in the same category as
          Dixie rye.

XQ. 26    Generally speaking, they are all
          three varieties?

A.        White bread is not considered as a
          variety bread.

XQ. 27    What is it considered?

A.        White bread. Variety breads are
          Honey Wheat, Dixie rye, crushed
          wheat.

13

The record indicates that applicant's bread bearing the designation "HONEY WHEAT" has always borne, in addition thereto, what applicant refers to as one of its "house marks," such as "MILLBROOK", "MRS. KARL'S", "BUTTERNUT", "SCHULZE", and "WEBER'S".  Shown below (in reduced size) are examples of bread wrapper end seals, bearing the designation "HONEY WHEAT", which were used by applicant around 1960:







Examples of end seals then used by applicant in connection with other types of bread are shown below (in reduced size):













Portions of two of applicant's current bread wrappers bearing

the designation "HONEY WHEAT" are shown below (in reduced size):

 

Opposer, a competitor of applicant, has been using the

mark "NATURE'S OWN" as a trademark for a line of soft variety

breads since 1979. The designation "HONEY WHEAT" is (and since

1979 has been) used by opposer to describe one type of

"NATURE'S OWN" bread, namely, bread containing honey and wheat

as ingredients.[6] The line also includes other types of

bread, such as bran and honey, butter, stone ground wheat,

whole grain, light white, and light wheat. Opposer's 1979

sales of "NATURE'S OWN HONEY WHEAT" bread were made in the

_____

[6] There is evidence in opposer's behalf to the effect that it
is a common practice in the baking industry to use the names of
ingredients to describe a loaf of bread.

16

states of Florida, North Carolina, and Virginia. In 1980, opposer expanded its use into the states of Georgia, Alabama, Louisiana, Mississippi, and Tennessee; in 1982, into Texas, Kentucky, West Virginia, and Ohio; and in 1983, into Oklahoma and Arkansas (all but three of these states, namely, Virginia, West Virginia, and Ohio, are included in the list of states for which applicant seeks registration). Opposer's sales of "NATURE'S OWN HONEY WHEAT" bread for the period 1979-1985 totalled approximately 32,000,000 loaves, or $25,000,000. The bread has been advertised on television and in magazines and billboards, with total advertising expenditures for the period amounting to more than $12,000,000. In addition, opposer has used "HONEY WHEAT" to describe a type of bread sold under the mark "COBBLESTONE MILL" since October of 1983. Reproduced below (in reduced size) are portions of opposer's "NATURE'S OWN HONEY WHEAT" and "COBBLESTONE MILL HONEY WHEAT" bread wrappers:




17

The evidence of record establishes that numerous third parties also use the designation "HONEY WHEAT" (either alone or with other descriptive terminology) to describe a type of bread product, and that in each case the descriptive material is used in conjunction with other matter which clearly serves a trademark function. For example, Arnold Food Company, Inc. (for ease in reading, the names of the third-party users are emphasized in this recitation) has used the descriptive designation "HONEY WHEAT BERRY BREAD" in conjunction with the mark "ARNOLD" and design since March of 1980 in, inter alia, several of the states for which applicant seeks registration (referred to hereafter as "applicant's area"), and has used the descriptive designation "APPLE HONEY WHEAT BREAD" in conjunction with the mark "BROWNBERRY" and design since November 11, 1981 in, inter alia, part of applicant's area. Pepperidge Farm, Incorporated has used the descriptive designation "HONEY WHEAT BERRY BREAD" in conjunction with the mark "PEPPERIDGE FARM" since January of 1975 throughout the United States. General Foods Corporation uses the descriptive designation "HONEY WHEAT BERRY" in conjunction with the mark "OROWEAT" for bread in, inter alia, part of applicant's area (although the stipulation of the parties relating to this use by General Foods Corporation does not specify the length of

such use, opposer's answers to applicant's interrogatories, which are of record, indicate that the use dates back to 1938). Metz Baking Company has used the descriptive designation "HONEY WHEAT BREAD" in conjunction with the mark "BETSY BAKER'S" since November of 1981 in part of applicant's area; has used the descriptive designation "HONEY WHEAT ROLLS" in conjunction with the mark "NATURE'S HARVEST" since January of 1981 in part of applicant's area; and has used the descriptive designation "OLD FASHIONED HONEY WHEAT DONUTS" in conjunction with the mark "OLD HOME" since February of 1984 in part of applicant's area. Campbell Taggert, Inc. has used the descriptive designation "HONEY NUGGET WHEAT BREAD" in conjunction with the mark "NATURAL HEARTH" and design since October of 1979 in part of applicant's area; has used the descriptive designation "HONEY WHEAT BERRY BREAD" in conjunction with the mark "COUNTRY HEARTH" since March of 1981 in part of applicant's area; has used the descriptive designation "HONEY WHEAT BREAD" in conjunction with the mark "COUNTRY HEARTH" and design since May of 1983 in the states of Indiana and Ohio; and has used the same or similar descriptive designations in conjunction with other marks in part of applicant's area since that time.

Other current third-party users include <u>Country Oven,</u> <u>Inc.</u> (apparently affiliated with Kroger), which uses "HONEY WHEAT BERRY BREAD" in conjunction with the mark "NATURAL GRAINS" in part of applicant's area; <u>S. B. Thomas, Inc.,</u> a <u>subsidiary of CPC International, Inc.,</u> which uses "HONEY WHEAT ENGLISH MUFFINS" in conjunction with the mark "THOMAS'"; <u>Rich</u> <u>Products Corporation</u>, which uses "HONEY WHEAT CAKE DONUTS" in conjunction with the mark "RICH'S" and design; <u>Winn Dixie,</u> which uses "HONEY WHEAT BREAD" in conjunction with the marks "DIXIE DARLING" and design and "PRESTIGE OVEN" in part of applicant's area; <u>Publix Super Markets, Inc.,</u> which uses "HONEY WHEAT BREAD" in conjunction with the mark "PUBLIX SPECIAL RECIPE" in part of applicant's area; and others.[7] Portions of the bread wrappers of several of the aforesaid third-party

_____

(7) Among the others are Stroehmann Brothers Company, the concurrent user listed in applicant's application, said by applicant to have been using the designation "HONEY CRUSHED WHEAT" in connection with bread since September of 1937 in states outside of the area for which applicant seeks registration, and The Lucks Company, of Seattle, Washington, which, like the opposer herein, opposed this application essentially on the ground that the designation "HONEY WHEAT" is merely descriptive as applied to bread and bread products and has not become distinctive of applicant's goods. In connection therewith, the opposition stated, inter alia, that The Lucks Company has sold, since at least as early as 1980, bread and roll mixes and bases and packaging for bread and rolls carrying a designation of the type of bread to be made from its bread mixes and bases, and that "HONEY WHEAT" and similar terms are used by The Lucks Company and others to describe types of mix, base or bread, rolls, and related goods and do not indicate the source of the goods. The record contains, as part of opposer's answers to applicant's interrogatories, an affidavit by the president of The Lucks Company (hereafter "Lucks") verifying the use by Lucks and its commercial baker customers of designations such as "HONEY AND WHEAT BREAD" and "HONEY WHOLE WHEAT" in a portion of applicant's area to describe the Footnote 7 continued on page 21.

users are shown below (in reduced size) as examples of such use:



Footnote 7 continued.
ingredients of their products. Although Lucks subsequently withdrew its opposition prior to the filing of an answer thereto by applicant, and the opposition was accordingly dismissed without prejudice, Lucks sent applicant a letter stating that the withdrawal was for reasons unrelated to the merits of the opposition; that Lucks had not changed its position that "HONEY WHEAT" is not appropriate subject matter for a trademark registration for bread; and that Lucks would take quite seriously any effort by applicant to interfere with use by opposer or its customers of "HONEY WHEAT" or similar terms for products containing wheat and honey as ingredients. In its answer to opposer's interrogatory No. 73, applicant stated that so far as it is aware, Lucks is still using the designation "HONEY WHEAT".

The record also contains evidence relating to efforts by applicant and its predecessor to stop others from using the designation "HONEY WHEAT" in applicant's trading area in connection with bread or bread products. In the 1940's and 1950's, applicant's predecessor, Interstate Bakeries Corporation, sent cease and desist letters to some 19 companies. Although some of the 19 apparently agreed to cease and desist, three of the 19 responded saying that they had priority of use; at least five others, according to applicant's correspondence file, continued to use "HONEY WHEAT" despite applicant's objection thereto. There is no evidence that applicant ever took any further action with respect to any of these companies. Yet another of the 19, Continental Baking Company, Inc., agreed in 1952 to use "WHEAT N' HONEY" instead of "HONEY WHEAT", but has since resumed use of "HONEY WHEAT" in connection with bread. A good number of the companies, including some who agreed to cease use as well as some who refused to do so, expressed a belief that the designation "HONEY WHEAT" was descriptive, generic, not subject to trademark protection, etc. Applicant has no knowledge, beyond the evidence developed by opposer herein (which establishes current use by Continental Baking Company, Inc.), as to whether any of the 19 companies are still using the designation "HONEY WHEAT".

In recent years, applicant itself has asserted a claim of trademark infringement against three other companies,

22

namely, Dietzens Bakeries, Inc., of Kokomo, Indiana (infringement letter sent May 23, 1978 objecting to Dietzens' use, in Illinois and Indiana, of the designation "HONEY WHEAT" in conjunction with the mark "HOLSUM" for bread); New Process Baking Co., of Chicago, Illinois, a licensee of Betterway Foods, Inc. (infringement letter sent June 19, 1979 objecting to use, in the Chicago area, of "HONEY WHEAT" in connection with bread); and Heilman Baking Company, of LaCrosse, Wisconsin (infringement letter sent May 22, 1985 objecting to use of "HONEY WHEAT" in conjunction with the mark "HUDSON BAY MILLING COMPANY" and design for buns). Although New Process Baking Co. agreed to cease use of the designation "HONEY WHEAT", the other two companies refused to do so and are still using the designation. The position of Heilman Baking Company was set forth by its counsel in a letter to applicant dated June 21, 1985. The letter reads, in part, as follows:

> Further, our client has invited our attention to product wrappers with at least 6 other bakeries in various parts of the U.S. all presumably adverse to Interstate and Stroehman [sic] and all of which use the designation as our client does, not as a trademark, but to identify a kind of product (usually bread or buns) containing honey and wheat. As a matter of fact, our client prominently displays its own trademark and tradedress on its wrappers. Under the circumstances, we doubt on the present state of the record that there is any need for revision or discontinuance of our client's current labelling.

23

Finally, the record contains, inter alia, copies of pages from six cookbooks (all of which bear copyright dates of 1983 or earlier), as well as printouts of stories from Mead Data Central's NEXIS computerized library, and printouts from the "Foods Adlibra" database of Dialog Information Services. The recipes shown in the cookbook pages include "Milk and Honey Whole Wheat Bread," "Honey-Wheat Muffins", "Winkler Honey Wheat Bread", "Honey-Whole Wheat Bread," and "Whole Wheat Honey Bread" (in two different cookbooks). The printouts of stories from the "NEXIS" library include uses of "HONEY WHEAT" in the following contexts, among others: "This year, Wonder test marketed 10 variety breads, including white, wheat, honey wheat, and rum fruit loaf." (The Washington Post, November 25, 1984); "Then came roast turkey with honey-wheat stuffing, butternut squash, .... At the White House, homemade honey-wheat bread is used for stuffing, and the recipe calls for two loaves, ...." (The Christian Science Monitor, November 23, 1983); "The banana-nut, cinnamon-raisin, honey-wheat and egg bagels sell for ...." (The Washington Post November 21, 1983); "It has been replaced by honey-wheat English muffins." (The New York Times, December 29, 1982); "What is more, the honey wheat muffins contain both whole wheat and unbleached white flour." (The New York Times, November 24, 1982); "The hot bagels come as honey wheat, salt, garlic, ... and, of course,

24

plain." (The Washington Post, May 19, 1982); and "... lined up on this counter are little baskets filled with homemade bread - orange nut, honey wheat, cheese, apple." (The Washington Post, February 9, 1978). The "NEXIS" printouts also include recipes for "Honey Wheat Cornbread" and "Honey Wheat-Germ Bread," both of which appeared in The Washington Post in 1982. The Dialong printouts are similar in nature. For example, one printout reads, "Quaker Oats Co. debuts a line of whole grain variety breads in the Northeast. Four varieties are wheat, honey wheat, light wheat and rye ..." (Bakery Production and Marketing, November 24, 1982).

Having carefully considered the evidence of record in this case,[8] we are of the opinion that such evidence overwhelmingly establishes not only that which applicant readily admits, namely, that the designation "HONEY WHEAT" is

(8) In addition to the evidence detailed above, the record contains other evidence, including, inter alia, copies of third-party registrations of marks containing the terms "HONEY" and/or "WHEAT", and copies of 12 state registrations issued to applicant for the designation "HONEY WHEAT" for bread. The third-party registrations of different marks are of little probative value in this case, which must be decided on its own particular facts and circumstances. Nor do the state registrations add anything to applicant's case in the absence of a showing that the states examine each application for registration on its merits, using the same criteria as those specified in the Trademark Act of 1946. See: Econo-Travel Motor Hotel Corp. v. Econ-O-Tel of America, Inc., 199 USPQ 307 (TTAB 1978), affirmed in unpublished opinion (CCPA 1979).

25

merely descriptive of bread and related products which contain honey and wheat as ingredients, but also that applicant did not have substantially exclusive use of the designation in its specified area for the five years next preceding the filing of its application, and that the designation has not become distinctive of applicant's goods in commerce in that area. In this regard, we fully agree with opposer's contention that long and continuous use alone is insufficient to show secondary meaning where the use is not substantially exclusive. As stated by the Court of Appeals for the Federal Circuit, in the case of Levi Strauss & Co. v. Genesco, Inc., 742 F.2d 1401, 222 USPQ 939, at 940-941 (1984),

> when the record shows that purchasers are confronted with more than one (let alone numerous) independent users of a term or device, an application for registration under Section 2(f) cannot be successful, for distinctiveness on which purchasers may rely is lacking under such circumstances.

Applicant argues, in the face of the extensive evidence of third-party use introduced by opposer, that it has used "HONEY WHEAT" as a trademark, while the others have used it descriptively[9]. As demonstrated by the portions of

---

[9] Applicant also argues that it has "policed its mark." Aside from the fact that applicant's efforts at policing its asserted mark have not been particularly successful, evidence that some competitors may have agreed to discontinue use of "HONEY WHEAT" upon threat of legal action by applicant or its predecessor shows a desire by those competitors to avoid litigation, rather than distinctiveness of "HONEY WHEAT". Cf. In re Wella Corp., 635 F.2d 845, 196 USPQ 7, at fn. 2 (CCPA 1977). Other arguments offered by applicant, but not discussed herein, are likewise unpersuasive.

wrappers shown above, however, there is no real difference between applicant's manner of use, on the one hand, and that of the opposer and the third-party users, on the other. Moreover, the evidence of record convinces us that purchasers who encounter the bread products of applicant, opposer, and others bearing the descriptive designation "HONEY WHEAT" would regard the designation as nothing more than the descriptive name of a type of bread, namely, bread containing honey and wheat as ingredients. Cf. Miller Brewing Co. v. G. Heileman Brewing Co., Inc., 561 F.2d 75, 195 USPQ 281 (CA 7 1977), cert. denied, 434 U.S. 1025, 196 USPQ 592 (1978), and Kern's Kitchen Inc. v. Bon Appetit, 3 USPQ2d 1382 (WD KY 1987).

For the foregoing reasons, we conclude that the opposition is well taken.

Decision:

The opposition is sustained, and registration to applicant is refused.

J. D. Sams

J. E. Rice

G. D. Krugman
Members, Trademark
Trial and Appeal Board

DEC 3 0 1987                    27