THIS OPINION IS A
PRECEDENT OF THE TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**

MBA

Mailed: May 28, 2008

Opposition No. 91174518

Bausch & Lomb Incorporated

v.

Karl Storz GmbH & Co. KG

**Before Walters, Zervas and Mermelstein, Administrative
Trademark Judges**

**By the Board:**

Karl Storz GmbH & Co. KG ("applicant") seeks to

register the mark shown below



("Applicant's Mark") for surgical, medical and veterinary

instruments,[1] and registration is opposed by Bausch & Lomb

Incorporated ("opposer"). Opposer alleges that: (1)

Applicant's Mark is confusingly similar to opposer's mark

---

[1] Application Serial No. 78692415, filed August 15, 2005 under
Section 44(e), for "Surgical, medical and veterinary instruments
and apparatus, namely surgical and medical apparatus and
instruments for use in general and endoscopic surgery; artificial
limbs, eyes and teeth; orthopedic articles, namely, suture
materials."

STORZ, which is used and registered,[2] in typed and stylized forms, for surgical instruments and related services; (2) Applicant's Mark "dilutes the distinctive quality of Opposer's STORZ Marks;" (3) "Applicant's use and attempted registration of Applicant's STORZ Mark violate the terms of" a 1982 agreement between the parties (the "Agreement," attached to opposer's motion as Exhibit 8); and (4) "Applicant's claimed rights in, and attempted registration of, Applicant's STORZ Mark constitute fraud on the USPTO, as Applicant knows that it does not have the right to claim rights in, or obtain a registration for, this purported mark pursuant to the Agreement."  Applicant, in its answer, denies the salient allegations in the notice of opposition, and raises a number of affirmative defenses, including estoppel based on the parties' Agreement and res judicata based on final decisions issued in prior Board proceedings between the parties.

---

[2]    Registration Nos.: (a) 1181498, issued December 1981, based on a date of first use in commerce of 1940 for STORZ in typed form for "Surgical Instrument Repair and Restoration Services" and "Custom Design of Surgical Instruments;" (b) 2378031, issued August 15, 2000, based on a date of first use in commerce of March 1, 1927 for STORZ (stylized)for "ophthalmic surgical instruments, namely instruments used in cataract and other ophthalmic related surgery;" (c) 2925184, issued February 8, 2005, based on a date of first use in commerce of March 1, 1927 for STORZ (stylized) for "ophthalmic surgical instruments and devices used in diagnosing eye conditions and performing ophthalmic surgical procedures and component parts thereof …;" and (d) 3116601, issued July 18, 2006, based on a date of first use in commerce of January 1, 1940 for STORZ (stylized) for "repair and restoration of surgical instruments."

This case now comes up for consideration of opposer's motion, filed October 4, 2007, seeking summary judgment on its pleaded claims of likelihood of confusion and fraud.[3] Applicant contests opposer's motion, which is fully briefed and ready for decision. Because the parties' arguments are inextricably intertwined with their Agreement, we address it first, prior to considering the parties' arguments with respect to opposer's motion.

I.   The Parties' Agreement

Applicant and opposer's predecessor in interest entered into the Agreement on April 26, 1982. Opposer's Motion Ex. 8. The Agreement recites the parties' respective rights to marks containing STORZ, and states that "the parties hereto wish to resolve the differences between them as to the registration and use of their respective marks in all countries of the world … ." Id. (emphasis added). The Agreement's primary purpose "is to define the ways in which the word 'Storz' can be used as a trademark or service mark or as part of a trademark or service mark" by the parties,

---

[3]   Opposer also seeks summary judgment on an unpleaded claim that "Applicant does not and did not at the time of its Application have a bona fide intention to use the STORZ THE WORLD OF ENDOSCOPY mark in commerce on or in connection with the identified goods or services …." Although opposer informally seeks leave to amend its notice of opposition to include this claim, it does so only through a single sentence in its reply brief, and applicant has therefore not had the opportunity to respond to this "motion." Accordingly, this unpleaded claim will not be considered. Paramount Pictures Corp. v. White, 31 USPQ2d 1768, 1772 (TTAB 1994) (summary judgment is not appropriate on unpleaded issue).

and indeed, the Agreement specifies how each party may "use the word 'Storz' in the trademark or service mark sense." Id. ¶¶ 2, 3. The word "STORZ" may be used "only as specified" in the Agreement. Id. ¶ 3.

The Agreement provides that applicant may use: (1) KARL STORZ GERMANY; (2) STORZ-GERMANY; (3) KARL STORZ; (4) KARL STORZ USA; (5) KARL STORZ ENDOSCOPY-AMERICA; (6) KARL STORZ-ENDOSCOPY; (7) STORZ ENDOSKOP; (8) KARL STORZ ENDOSKOP; and (9) KS STORZ. Id. ¶ 3. It further provides that "[t]he initial 'K' may be substituted for 'KARL' in any of the foregoing," and that applicant "may supplement any of the above examples with additional trademark formatives, whether by way of letters, numbers, words, syllable (sic), or designs." Id. Provided applicant complies with these requirements, opposer may not "raise any objections in any manner if KARL STORZ uses any of the marks specified … in any country of the world or applies for registration of any of such marks in any country of the world." Id. ¶ 8.

While opposer's motion does not specifically argue that Applicant's Mark should be refused registration based on the Agreement alone, opposer asserts that the Agreement "does not allow Applicant to use [Applicant's Mark] or any other variation using the word STORZ without the qualifiers Karl, K., Germany or the German word 'Endoskop.'" Applicant claims, however, that Applicant's Mark "is formed by

supplementing STORZ ENDOSKOP with approved formatives," specifically "the suffix 'opy.'" According to applicant, opposer "placed no limitation on [applicant's] use of supplemented STORZ ENDOSKOP marks such as the STORZ THE WORLD OF ENDOSCOPY marks at issue, although [opposer] could have done so."

There is no dispute that on February 23, 1989, opposer's predecessor in interest objected in writing to applicant's use of Applicant's Mark. Although applicant responded in writing to this objection on April 3 and December 8, 1989, opposer did not pursue its objection to the use of Applicant's Mark again until 2003. Opposer claims, and applicant does not dispute, that opposer "opposed [Applicant's Mark] in Australia in August of 2003, in Israel in October of 2004, and in Pakistan in December of 2004." However, applicant contends that because opposer did not pursue its objection to the use of Applicant's Mark between 1989 and 2003, applicant was "under the impression that [opposer] had acquiesced to its use of [Applicant's Mark]."

II.  Opposer's Motion

  A.  Fraud

Opposer's motion for summary judgment on its fraud claim is based on applicant's April 28, 2006 response to a March 19, 2006 office action which refused registration of

Applicant's Mark based on an alleged likelihood of confusion with several of opposer's registrations.  In its response to the office action, applicant: (a) stated that opposer and applicant "reached a consent agreement regarding use and registration of marks featuring wording STORZ;" (b) included a complete copy of the Agreement as an exhibit; and (c) argued that Applicant's Mark "is a supplemented STORZ ENDOSKOP mark in accordance with the Agreement."

According to opposer, "[t]here can be no question that both Applicant and Mr. Whitmyer, who signed the Response, were well aware that [opposer] objected rather than consented to Applicant's use of [Applicant's Mark]." Opposer further argues that the "knowingly false representation, which was never corrected, was material because the examining attorney had previously refused the Application due to likelihood of confusion with [opposer's] STORZ Marks and, based on Applicant's false submission, reversed course."

Applicant claims, however, that while opposer "may disagree with Applicant's interpretation of the [Agreement]," there was "no false or misleading statement made to induce the Examining Attorney to approve the application.  The Examining Attorney was free to view the text of the [Agreement] and come to a different conclusion."

    B.   <u>Likelihood of Confusion</u>

In support of its motion for summary judgment on its likelihood of confusion claim, opposer argues that the parties' marks are confusingly similar "in appearance, sound, connotation and commercial impression," that the parties' goods and services "are in some cases identical," or at least similar or related, and that because there are no limitations with respect to channels of trade in either opposer's registrations or applicant's application, "it must be presumed that the services of each would be offered in all the normal channels of trade." Opposer further argues that its STORZ marks are "famous" and "should be accorded a wide latitude of legal protection," that there has been significant actual confusion between the parties (but not specifically related to Applicant's Mark) and that "greater protection is required than in the ordinary case" because the parties' goods are medical and surgical in nature. Finally, although it does not specifically allege that applicant had an improper intent in adopting or using Applicant's Mark, opposer claims that Applicant's Mark "violates the terms" of the parties' Agreement.

Applicant claims that there are genuine issues of material fact remaining for trial on the issue of likelihood of confusion. Specifically, applicant claims that there are "clear visual differences and phonetic differences between the marks," and that there are questions of fact regarding

7

"the degree to which Applicant and Opposer overlap in their channels of trade." Applicant also claims that consumers of the parties' products "are highly sophisticated and less prone to confusion."

   C.   Applicant's Affirmative Defenses

   In addition to disputing opposer's claims of fraud and likelihood of confusion on the merits, applicant relies on two of its affirmative defenses in arguing that opposer's motion should be denied. First, applicant claims that opposer "is [contractually] estopped from maintaining the present opposition" because Applicant's Mark "is merely a supplemented STORZ ENDOSKOP mark in accordance with" the Agreement. Similarly, applicant claims that opposer is equitably estopped from contesting registration of Applicant's Mark because applicant undertook "extensive efforts to establish its marks as unique identifiers …," in reliance on the Agreement, opposer's alleged approval of marks similar to Applicant's Mark, and opposer's failure to further pursue its 1989 objection to Applicant's Mark for 14 years. Opposer, in its reply brief, argues that "none of [opposer's] conduct that pre-dates the Application can support an equitable estoppel argument," as a matter of law.

   Second, applicant claims that the final decision in Opposition Nos. 91160344 and 91160957 -- both brought by opposer against applicant -- bars opposer's claims in this

proceeding.  In the prior opposition proceedings, opposer sought to prevent applicant's registration of the marks shown below

 

for medical products.  On February 28, 2007, the Board issued an order dismissing each proceeding with prejudice, following opposer's withdrawal of both oppositions with prejudice.  In its reply brief, opposer claims that its "withdrawal of its oppositions to a mark that included the word 'Karl' is wholly irrelevant to [opposer's] current opposition to a materially different mark that does not include the word 'Karl' or otherwise comply with the [Agreement]."

III. Decision

Summary judgment is only appropriate where there are no genuine issues of material fact in dispute, thus allowing the case to be resolved as a matter of law.  Fed. R. Civ. P. 56(c).  Opposer, as the movant seeking summary judgment, bears the initial burden of demonstrating the absence of any genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Sweats Fashions, Inc. v. Pannill Knitting Co. Inc., 833 F.2d 1560, 1563, 4 USPQ2d 1793, 1796 (Fed. Cir. 1987).  A factual dispute is genuine

if, on the evidence of record, a reasonable fact finder could resolve the matter in favor of the non-moving party. See Opryland USA Inc. v. Great American Music Show Inc., 970 F.2d 847, 850, 23 USPQ2d 1471, 1472 (Fed. Cir. 1992); Olde Tyme Foods, Inc. v. Roundy's, Inc., 961 F.2d 200, 202, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992).

The evidence on summary judgment must be viewed in a light most favorable to the non-movant, in this case applicant, and all justifiable inferences are to be drawn in applicant's favor. Lloyd's Food Products, Inc. v. Eli's, Inc., 987 F.2d 766, 767, 25 USPQ2d 2027, 2029 (Fed. Cir. 1993); Opryland USA, supra. The Board may not resolve issues of material fact; it may only ascertain whether issues of material fact exist. See Lloyd's Food Products, 987 F.2d at 766, 25 USPQ2d at 2029; Olde Tyme Foods, 961 F.2d at 200, 22 USPQ2d at 1542.

A.    Standing

As a preliminary matter, "opposer's standing has been adequately established by the introduction" of the parties' Agreement. Vaughn Russell Candy Co. v. Coolies in Bloom Inc., 47 USPQ2d 1635, 1638 n. 7 (TTAB 1998).[4]

---

[4]    Opposer attempted to make its registrations of record by attaching to its notice of opposition printouts from the Office's electronic database records showing the current status and title of its registrations. While this would have been sufficient to make the registrations of record under the current version of Trademark Rule 2.122(d)(1), it was not sufficient under the

B.    The Agreement

"[A]lthough other courts would be the proper tribunals in which to litigate a cause of action for enforcement or breach of the contract here involved, that is not sufficient reason for the board to decline to consider the agreement …."  Selva & Sons, Inc. v. Nina Footwear, Inc., 705 F.2d 1316, 1324, 217 USPQ 641, 647 (Fed. Cir. 1983); see also M-5 Steel Mfg. Inc. v. O'Hagin's Inc., 61 USPQ2d 1086, 1095 (TTAB 2001).  Applicant concedes as much, stating that "an agreement that clearly dictates the parties' rights with respect to the marks at issue can be dispositive in addressing the substance of an opposition."  Applicant's Opposition to Opposer's Motion at 7.[5]  If the Agreement bars applicant's use of Applicant's Mark, then applicant is not entitled to registration.  Vaughn Russell, 47 USPQ2d at 1637.

Because construction of a contract is a question of law, resolution of the meaning and interpretation of a contract is appropriate on summary judgment.  See, Interstate Gen. Gov't Contractors, Inc. v. Stone, 980 F.2d 1433, 1434 (Fed. Cir. 1992) ("Interpretation of a contract is a legal question …").  Furthermore, while opposer did not

---

version of the Rule in effect at the time opposer filed its notice of opposition.

[5]    Applicant also concedes that "[t]here is no dispute that the Agreement is in full force and effect …."  Applicant's Opposition at p. 9.

specifically move for summary judgment based directly on the Agreement, the parties' interpretation of the Agreement is part and parcel of their arguments regarding summary judgment, and is the issue on which each party focuses most extensively. The Board may therefore enter summary judgment, *sua sponte*, based directly on the Agreement itself, because applicant was on notice of the need to come forward with all evidence relevant to the Agreement. See, Celotex Corp., 477 U.S. at 325.

There is no dispute that the Agreement does not expressly authorize applicant to use Applicant's Mark – applicant concedes as much. Opposer's Motion Ex. 5 (Deposition of Jack A. Frydrych Tr. 80) (Applicant's Mark is "not directly spelled out in Paragraph 3" of the Agreement). The question presented boils down to whether, as applicant contends, Applicant's Mark "is formed by supplementing STORZ ENDOSKOP with approved formatives," i.e. "the suffix 'opy.'" We find that it is not, and that the Agreement bars use of Applicant's Mark.

Most importantly, Applicant's Mark does not contain the approved German word ENDOSKOP, or KARL STORZ, K STORZ, etc. It instead contains the English word ENDOSCOPY. In the context of the parties' Agreement, this difference is particularly significant. As opposer points out, each of the nine marks specifically authorized by the Agreement

12

contain either: (a) the word KARL (or a K or KS); (b) the German word ENDOSKOP (spelled with a "k"); and/or (c) an indication that the mark is owned by applicant, the German entity, i.e. STORZ-GERMANY.  As opposer argues, each of the specifically authorized marks "reduce the likelihood of confusion between the U.S. company, Storz Instruments, and the German company, Karl Storz, by identifying the user of the mark as the German company …."  Opposer's Motion at 5.  As opposer further argues, to allow applicant to use a mark with the English word ENDOSCOPY, without any indication that the mark is used by the German company, would make the authorization for applicant to use the permitted mark KARL STORZ-ENDOSCOPY superfluous.  Agreements may not be interpreted in such a manner.  See, Gardiner, Kamya & Associates, P.C. v. Jackson, 467 F.3d 1348, 1353 (Fed. Cir. 2006).

To "supplement" means to "complete," or "add to." Random House College Dictionary 1320 (1st ed. rev. 1984). Quite simply, Applicant's Mark is not a "supplemented" STORZ ENDOSKOP mark, because it uses the English word ENDOSCOPY, rather than the German word ENDOSKOP; in addition, the mark does not contain KARL or the letter K or letters KS.  The mark is therefore outside of the specific uses permitted by the Agreement.  Because the Agreement permits use of the

STORZ mark only as specified, we conclude that Applicant's Mark is prohibited.

### C. Applicant's Defenses

We are not persuaded by applicant's defenses. First, as explained above, applicant's contractual estoppel argument fails because the Agreement bars use or registration of Applicant's Mark, and permits opposer to object to Applicant's Mark. Applicant's equitable estoppel argument is also unavailing. Conduct which occurs prior to the publication of the application for opposition generally cannot support a finding of equitable estoppel. See, Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc., 971 F.2d 732, 734, 23 USPQ2d 1701, 1703 (Fed. Cir. 1992); National Cable Television Ass'n Inc. v. American Cinema Editors Inc., 937 F.2d 1572, 1581, 19 USPQ2d 1424, 1432 (Fed. Cir. 1991). While opposer apparently did not pursue its objection to use of Applicant's Mark between 1989 and 2003, there is no evidence that opposer knew or should have known of applicant's alleged use of Applicant's Mark in the U.S. In fact, opposer seeks summary judgment on its unpleaded claim that applicant does not have a bona fide intention to use Applicant's Mark in the U.S.

Second, applicant's res judicata argument based on prior Opposition Nos. 91160344 and 91160957 fails because the marks at issue in those proceedings were different than

the mark at issue here.  <u>Chromalloy American Corp. v.
Kenneth Gordon (New Orleans) Ltd.</u>, 736 F.2d 694, 698, 222
USPQ 187, 190 (Fed. Cir. 1984) ("The claim against LADY
GORDON is simply not the same claim as one against GORDON OF
NEW ORLEANS."); <u>Institut National Des Appellations d'Origine
v. Brown-Forman Corp.</u>, 47 USPQ2d 1875, 1894 ("applicant's
MIST AND COGNAC mark … is a different mark … from CANADIAN
MIST AND COGNAC …").  As opposer notes, those marks included
the wording "KARL STORZ," which was among the marks
explicitly permitted by the Agreement.  Because they
involved a materially different mark, the prior
adjudications cannot bar opposer's claims in this
opposition.

    D.   <u>Conclusion</u>

    Because the Agreement prohibits the use of Applicant's
Mark, opposer's motion for summary judgment is **GRANTED**.  The
opposition is sustained.[6]

<u>News from the TTAB</u>

The USPTO published a notice of final rulemaking in the
Federal Register on August 1, 2007, at 72 F.R. 42242.  By
this notice, various rules governing Trademark Trial and
Appeal Board inter partes proceedings are amended.  Certain
amendments have an effective date of August 31, 2007, while
most have an effective date of November 1, 2007.  For
further information, the parties are referred to a reprint
of the final rule and a chart summarizing the affected
rules, their changes, and effective dates, both viewable on
the USPTO website via these web addresses:

---

[6]    Given our findings with respect to the Agreement, there is
no need to specifically consider opposer's likelihood of
confusion or fraud claims.

http://www.uspto.gov/web/offices/com/sol/notices/72fr42242.pdf
http://www.uspto.gov/web/offices/com/sol/notices/72fr42242_FinalRuleChart.pdf

By one rule change effective August 31, 2007, the Board's standard protective order is made applicable to all TTAB inter partes cases, whether already pending or commenced on or after that date.  However, as explained in the final rule and chart, this change will not affect any case in which any protective order has already been approved or imposed by the Board.  Further, as explained in the final rule, parties are free to agree to a substitute protective order or to supplement or amend the standard order even after August 31, 2007, subject to Board approval.  The standard protective order can be viewed using the following web address: http://www.uspto.gov/web/offices/dcom/ttab/tbmp/stndagmnt.htm

***