**INTERSTATE BRANDS CORP.,**
**Appellant,**

v.

**CELESTIAL SEASONINGS,**
**INC., Appellee.**

**Appeal No. 78–504.**

United States Court of Customs
and Patent Appeals.

June 8, 1978.

Rehearing Denied Aug. 10, 1978.

Robert D. Hovey, Schmidt, Johnson, Hovey & Williams, Kansas City, Mo., atty. of record, for appellant.

Michael D. McIntosh, Sheridan, Ross, Fields & McIntosh, Denver, Colo., atty. of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE, and MILLER, Judges.

MARKEY, Chief Judge.

Appeal from a decision of the Trademark Trial and Appeal Board (board), 196 USPQ 321 (TTAB 1977), dismissing an opposition to the registration of RED ZINGER, application serial No. 449,678. We affirm.

Interstate Brands Corporation (Interstate) opposes registration by Celestial Seasonings, Inc. (Celestial) of RED ZINGER, asserting that its use on herb tea would be likely to cause confusion or mistake with Interstate's registered trademark ZINGERS, registration No. 1,001,315, previously used on cakes.

On appeal, Interstate argues that the board committed reversible error in: (1) failing to conclude that confusion is likely where similar marks are used on food products; (2) finding ZINGERS is a weak mark, in the light of certain third party registrations; and (3) relying on the position taken by opposer in the course of obtaining its registration.[1]

### Issue

The dispositive issue is whether the contemporaneous marketing of RED ZINGER herb tea and ZINGERS cakes would be likely to cause confusion.

### OPINION

■ Interstate's major substantive contention is that case law has established a rule whereby confusion is to be found likely whenever food items are sold under the same or similar marks. There is no such "rule." On the contrary, "[e]ach case must be decided on its own facts and the differences are often subtle ones." *Industrial Nucleonics Corp. v. Hinde*, 475 F.2d 1197, 1199, 177 USPQ 386, 387 (Cust. & Pat.App. 1973). In testing for likelihood of confusion, the evidentiary considerations set forth in *duPont, supra* note 1, when of record, must be applied. *Id.* 476 F.2d at 1361, 177 USPQ at 567.

The opinion of the board with respect to Interstate's contention is particularly apt:

This Board and its appellate tribunal, the Court of Customs and Patent Appeals, have, on numerous occasions, held that the sale of different food items under the same or similar marks is likely to

---

1. Opposer also alleges that considering the absence of actual confusion was error. "The length of time during and conditions under which there has been concurrent use without evidence of actual confusion," must be considered, when of record. *In re E. I. duPont deNemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (Cust. & Pat.App.1973).

cause confusion in trade. This has been based on common purchasers, common trade channels, the diversification and consolidation of food manufacturing and distributing companies, and the function of a trademark as a source indicator. There is no doubt but that a universal observance of these decisions would make the task of a trier of fact a simple one, of placing each case regardless of the facts in a single pigeonhole and, if it doesn't necessarily fit therein, then of just squeezing a little harder until it does fit. However, as urged by applicant, trademark law must necessarily be flexible responding to particular circumstances disclosed by particular fact situations thereby making a hard and fast rule in these cases anathema to its concept and application. That is, this is contrary to the principle of trademark law that each case must be decided on the basis of all relevant facts which include the marks and the goods as well as the marketing environment in which a purchaser normally encounters them and the experience generated as a result of their use in the marketplace providing such use has been of sufficient length and depth to make an impact in the market.

The fact that goods of different types may be sold in the same stores has been placed in a proper perspective by the Court in *Federated Foods, Inc., d.b.a. Hy-Top Products Division v. Fort Howard Paper Company*, [544 F.2d 1098] 192 USPQ 24 (CCPA, 1976) wherein it stated at p. 29

"A wide variety of products, not only from different manufacturers within an industry but from also diverse industries, have been brought together in the modern supermarket for the convenience of the consumer. The mere existence of such an environment should not foreclose further inquiry into the likelihood of confusion arising from the use of similar marks on any goods so displayed. See: *Canada Dry Corp. v. American Home Products Corp.*, 468 F.2d 207, 175 USPQ 557 (CCPA, 1972). The means of distribution and sale al-

though certainly relevant, are areas of peripheral inquiry. The fundamental inquiry mandated by Sec. 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks." 196 USPQ at 324–25. Although *Hy-Top* involved paper rather than food products, its rationale is fully applicable to the latter.

■ To the extent that *In re United Biscuit Co. of America*, 404 F.2d 998, 56 CCPA 785, 160 USPQ 45 (1968), *Shawnee Milling Co. v. Sidney Wanzer & Sons*, 390 F.2d 1002, 55 CCPA 957, 157 USPQ 57 (1968), and *Roddenbery Co. v. Kalich*, 158 F.2d 289, 34 CCPA 745, 72 USPQ 138 (1946) (not decided under the Lanham Act) may have suggested the existence of a "per se" rule applicable to food, *duPont, supra*, and *Hy-Top, supra*, refute that suggestion. A per se rule based on a single fact would be improper and inconsistent with § 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).

■ We agree also with the board's interpretation of the mark here sought to be registered:

[A]part from the fact that applicant's mark must be considered in its entirety, the presence of the word "RED" in applicant's mark cannot be dismissed as an identification factor. Thus whether we consider applicant's mark to be "THE RED ZINGER" or "RED ZINGER", it is distinguishable from "ZINGERS", per se. 196 USPQ at 325.

■ Similarly, we find no error in the citation of nine third-party registrations "primarily to show the meaning of * * * ['zing'] in the same way that dictionaries are used." *The Conde Nast Publications, Inc. v. Miss . Quality, Inc.*, 507 F.2d 1404, 1407, 184 USPQ 422, 425 (Cust. & Pat.App. 1975).

Celestial made of record the ZINGERS registration file, arguing:

[T]he applicant's application and that of opposer were both pending at the same time and were both forwarded to publication by the Examiner on the theory that there was no conflict between them. Before opposer's mark was allowed, regis-

tration was refused in view of the prior registered mark "ZINGS" for pretzels and for biscuits and crackers [Reg. No. 807,001, issued April 12, 1966 and Reg. No. 892,971, issued June 16, 1970, both in the name of the National Biscuit Company], all snack items like opposer's cakes. Opposer argued successfully that "ZINGS" was a "weak" mark entitled to a narrow scope of protection because of the dictionary meaning of "ZING" and a number of third-party registrations including "ZING" for wheat germ, for near beer, and for wine and "ZINGER" for prepared alcoholic cocktails, on the basis of which, ". . . it will be obvious that the word 'ZING' along with several modifications thereto have been held to be simultaneously registrable wherein the basic term has been modified by supplying a suffix thereto"; that the goods were distinctly different; and that

"The difference in the respective marks as applied to different products are cumulative differences which preclude any likelihood of confusion."

196 USPQ at 325–26 (footnote omitted).

■ The board erroneously concluded in the present case that: "Opposer's argument in support of its [own application for] registration * * * is, in essence, an admission in view of the cumulative differences herein between the marks and goods that confusion is unlikely to occur." 196 USPQ at 326. But, because "that confusion is unlikely to occur" is a legal conclusion, it cannot be an "admission." Facts alone may be "admitted."[2] In reaching the legal conclusion, the decision maker may find that a fact, among those on which the conclusion rests, has been admitted; he may not, however, consider as "admitted" a fact shown to be non-existent by other evidence of record; nor may he consider a party's opinion relating to the ultimate conclusion an "admission."

■ The opinion of an interested party respecting the ultimate conclusion involved in a proceeding would normally appear of no moment in that proceeding.[3] Moreover, it is known at the outset. One may assume, for example, that an opposer believes confusion likely and that a defending applicant does not. That a party earlier indicated a contrary opinion respecting the conclusion in a similar proceeding involving similar marks and goods is a fact, and that fact may be received in evidence as merely illuminative of shade and tone in the total picture confronting the decision maker. To that limited extent, a party's earlier contrary opinion may be considered relevant and competent. Under no circumstances, may a party's opinion, earlier or current, relieve the decision maker of the burden of reaching his own ultimate conclusion on the entire record.

■ Interstate's opinion respecting confusion, expressed in the course of obtaining its registration, was not considered controlling or determinative. The examiner and the board reached the required legal conclusion respecting likelihood of confusion upon their own independent evaluations of all probative facts of record. The board did not in the present case base its decision entirely on opposer's opinion; and reference in the present case thereto, though unnecessary, does not constitute reversible error where, as here, the remainder of the board's rationale reflects a correct analysis of the evidence in light of *duPont*.

The decision of the board dismissing the opposition is *affirmed*.

AFFIRMED.

---

**2.** In *Maremont Corp. v. Air Lift Co.*, 463 F.2d 1114, 59 CCPA 1152, 174 USPQ 395 (1972), and in *Baker's Franchise Corp. v. Royal Crown Cola Co.*, 404 F.2d 985, 56 CCPA 798, 160 USPQ 192 (1969), the admissions in prior pleadings were admissions of fact. They were properly viewed as evidentiary, and neither judicial nor conclusive.

**3.** We do not here deal with opinion testimony of an expert concerning the ultimate conclusion to be reached. That testimony is permissible under Fed.R.Evid. 702.