Hearing:                                                    G. Smith
January 12, 1988                                        Paper No. 72

FOR PUBLICATION IN FULL

U. S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

Domino's Pizza, Inc.
v.
Little Caesar Enterprises, Inc.

———

Opposition No. 69,431 to application Serial No. 411,882
        filed February 1, 1983.

Opposition No. 69,644 to application Serial No. 411,880
        filed February 1, 1983.

Opposition No. 69,677 to application Serial No. 411,881
        filed February 1, 1983.

———

Harness, Dickey & Pierce for Domino's Pizza, Inc.

Brooks & Kushman for Little Caesar Enterprises, Inc.

———

Before Rice, Rooney and Seeherman, Members.

Opinion by Rice, Member:

Applications were filed by Little Caesar Enterprises, Inc. to register, on the Principal Register under the provisions of Section 2(f) of the Trademark Act of 1946, 15 U.S.C. 1052(f), the designations "SINGLE"[1] and "TRIPLE"[2] for pizza for consumption on or off the premises, and "DOUBLE"[3] for individual serving size pizzas for consumption on or off the premises. In each application, applicant claims use since August 3, 1977.

———

(1) Ser. No. 411,880, filed February 1, 1983.
(2) Ser. No. 411,882, filed February 1, 1983.
(3) Ser. No. 411,881, filed February 1, 1983.

Registration was opposed in each instance[4] by Domino's Pizza, Inc. essentially on the ground that opposer is in the business of selling pizza and related products through its company-owned stores and through franchisees; and that the terms "SINGLE", "DOUBLE", and "TRIPLE" are merely descriptive as applied to applicant's pizza and have not become distinctive thereof. Specifically, opposer alleged that the terms "SINGLE", "DOUBLE", and "TRIPLE" are used by applicant to describe pizza having one ingredient (cheese), two ingredients (cheese and pepperoni), and three ingredients (cheese, pepperoni, and mushrooms), respectively, and that these terms are commonly used in the food industry to describe characteristics of food products.

Opposer further alleged that as a result of the decision in a prior civil action between the parties, wherein applicant charged opposer with infringement of applicant's rights in the designation "DOUBLE" for pizza, applicant is estopped, under the doctrines of res judicata and collateral estoppel, from claiming that the terms sought to be registered

(4) Ser. No. 411,880 is the subject of Opposition No. 69,644; Ser. No. 411,881, of Opposition No. 69,677; and Ser. No. 411,882, of Opposition No. 69,431.

2

Op. 69,431; Op. 69,644 &
Op. 69,677

have become distinctive of applicant's goods.[5]

Applicant, in its answers to the notices of opposition, admitted that opposer is a franchiser of pizzerias, and that the civil suit referred to in the oppositions was brought, but in effect denied the remaining salient allegations contained therein, and specifically asserted, in its answer to the opposition directed to the term "DOUBLE", that the goods set forth in the "DOUBLE" application are different from those adjudicated in the civil action.

The three proceedings were consolidated by stipulation of the parties, and were presented on the same record, briefs, and oral hearing. The record in the consolidated proceedings consists of the pleadings; the files of applicant's subject applications; each party's responses to its adversary's requests for discovery, made of record, in each instance, by the inquiring party pursuant to Trademark Rule 2.120(j)(3);

[5] After receiving an adverse decision in the civil action, applicant filed a request that the identification of goods in its application to register the term "DOUBLE" be changed from "pizza for consumption on or off the premises" (the identification listed in all three applications as originally filed) to "individual serving size pizzas for consumption on or off the premises." The amendment, which was made for the asserted purpose of delineating applicant's goods from those of opposer, was filed after publication of "DOUBLE" and after the filing of opposer's opposition to the term "TRIPLE", but prior to the filing of opposer's opposition directed to the term "DOUBLE". The amendment was approved and entered by the Trademark Examining Attorney to whom the three applications had been assigned.

3

copies of certain Supplemental Register registrations owned by applicant; copies of certain third-party registrations made of record by applicant under Trademark Rule 2.122(e); copies of the file histories of applicant's registrations, copies of pages from a dictionary, and copies of documents from the prior civil action between the parties, all relied upon by opposer under Trademark Rule 2.122(e); stipulated facts in behalf of applicant; affidavit testimony in behalf of opposer, made of record by stipulation of the parties, pursuant to Trademark Rule 2.123(b); copies of the transcripts of certain testimony depositions taken in the prior civil action and made of record by stipulation of the parties, namely, the deposition of Michael Ilitch taken January 27, 1984 and the depositions of Thomas Monaghan taken January 11, 1984 and March 16, 1984; and testimony depositions taken by both parties in this proceeding.

Applicant's evidence establishes that it is the owner and/or franchiser of over 1,000 pizza restaurants operating under the name and mark "LITTLE CAESARS" and about 15 pizza restaurants operating under the name and mark "PIZZA STATION". Since on or about August 3, 1977, applicant has continuously used the designations sought to be registered herein, namely, "SINGLE", "DOUBLE", and "TRIPLE", in connection with individual servings of pizza for consumption on or off its restaurant

4

premises. The designations are used primarily in connection with the "PIZZA STATION" restaurants. Shown below (in reduced size) are a portion of a handbill menu (applicant's Exhibit 3), and another menu filed as a specimen in each of applicant's involved applications, illustrating applicant's use of the designations sought to be registered:





The designations are used not only at point-of-sale on menus, menu boards, etc., but also in advertising, including advertising by mailers, handouts, newspaper, radio, television, etc., with the designation "DOUBLE" being the one which is most heavily advertised. Similarly, sales of "DOUBLE" individual pizza servings were approximately twice as large as sales of "SINGLE", or sales of "TRIPLE", individual pizza servings.[6]

Applicant has registered the designations "SINGLE", "DOUBLE", and "TRIPLE" upon the Supplemental Register for

---

[6] Applicant offered the testimony of Mr. Kim Pollack, President of applicant's Pizza Stations Division, who testified, inter alia, as to Pizza Station sales and advertising figures for products bearing the designations "SINGLE", "DOUBLE", and/or "TRIPLE". Opposer objected to the figures essentially on the ground of lack of foundation, because the witness testified that he did not know who compiled the figures, and because the records from which the figures were compiled were never produced for inspection by opposer. Although we believe that opposer's objection is well taken insofar as it relates to exact figures, it is clear that Mr. Pollack, as president of the Pizza Station Division, had personal knowledge of the general magnitude of the sales and advertising figures, and we accept his testimony to that extent. Cf. Safe-T Pacific Co. v. Nabisco, Inc., 204 USPQ 307 (TTAB 1979). The testimony is at least sufficient to show that applicant's sales and advertising involving one or more of the designations have been on a significant, albeit not massive, level.

6

"pizza for consumption on or off the premises."[7]  In each case, applicant originally sought registration on the Principal Register; registration was finally refused under Section 2(e)(1) on the ground of mere descriptiveness; and applicant thereafter filed an amendment to seek registration on the Supplemental Register.[8]

Opposer is engaged in the business of selling pizza through some 3,300 franchised and company-owned stores in the United States.  Opposer has been using the term "DOUBLE" descriptively since 1973.  During the early years, opposer used the term "DOUBLE" as part of such descriptive phrases as "DOUBLE SAUCE", "DOUBLE CRUST", "DOUBLE CHEESE" (still used by

_____

[7] Registration No. 1,149,441, issued March 24, 1981, affidavit Sec. 8 accepted ("SINGLE"); Registration No. 1,149,439, issued March 24, 1981, affidavit Sec. 8 accepted ("DOUBLE"); Registration No. 1,149,440, issued March 24, 1981, affidavit Sec. 8 accepted ("TRIPLE").
[8] Applicant's evidentiary record also includes copies of three third-party registrations issued on the Principal Register, namely, a registration of the mark "SINGLES" for containers of prepared foods for adults comprising main and side course meals; a registration of the mark "TRIPLE" for rice; and a registration of the mark "TRIPLES" for chocolate covered wafers.  However, such registrations, involving different goods and different fact situations, have no real bearing on the issues to be determined herein; each case must be determined on its own facts and merits.  See: Abraham's Seed v. John One Ten, 1 USPQ2d 1230, 1233 (TTAB 1986); In re Scholastic Testing Service, Inc., 196 USPQ 517 (TTAB 1977); and cases cited therein.

7

opposer), and "DOUBLE DOUGH". Since 1983 or 1984, opposer has used the terms "SINGLES" (or "SINGLE"), "DOUBLES", and "TRIPLES" to indicate that a customer can buy one, two, or three pizzas, respectively, for a single price. Shown below, in reduced size, are examples (from opposer's Exhibits 28 and 30) of opposer's usage of these terms (as well as of "DOUBLE CHEESE"):





**DOMINO'S PIZZA SINGLES**

12" Single $4.55
Additional Items $.89

14" Single $5.85
Additional Items $1.09

Additional Items
Pepperoni, Mushrooms, Green and Black Olives, Onions, Green Peppers, Ground Beef, Sausage, Ham, Bacon, Double Cheese, Extra Thick Crust, Anchovies, Hot Pepper Rings, Pineapple

The Price Destroyer™ Limited portions of nine items for the price of five.

Coke®/1½ liter bottles, 60¢.

Prices do not include applicable sales tax.

Our drivers carry less than $20.00. Limited delivery area.
©1985 Domino's Pizza, Inc.

**DOMINO'S PIZZA DOUBLES**

Two pizzas for one special price.

10" Doubles $5.49
Additional Items $.99

12" Doubles $6.99
Additional Items $1.19

14" Doubles $8.69
Additional Items $1.39

**Call us.**
**941-5355**
1317 South Airport Rd.
Traverse City

**Fast, Free Delivery™**

Domino's Pizza, Inc. V. Little Caesar Enterprises, Inc.
Opposition Nos. 69,431, 69,644 and 69,677
OPPOSER'S EXHIBIT 30

**Domino's Pizza Delivers™**

**Triples™**

Three 12" pizzas for one low price.

SINGLE-one 12" cheese pizza $4.49
8 slices = 56¢/slice
89¢ per additional topping

DOUBLES™-Two 12" cheese pizzas $6.99
16 slices = 44¢/slice
99¢ per additional topping (on both pizzas)

TRIPLES™-Three 12" cheese pizzas $8.99
24 slices = 37¢/slice
99¢ per additional topping (all three pizzas)

Additional Items
Pepperoni, Mushrooms, Black Olives, Green Olives, Onions, Green Peppers, Ground Beef, Sausage, Ham, Hot Peppers, Double Cheese
Single-69¢ per item
Doubles™ & Triples™ 99¢ per item

The Price Destroyer™
9 items for the price of 5
SINGLE-$7.94 (8 slices)
DOUBLES™-$11.94 (16 slices)
TRIPLES™-$13.94 (24 slices)

8

The evidence of record includes the testimony depositions of a number of third parties proving certain uses by them in connection with the sale of pizza, namely, use by Ann's Party and Pizza Shop, since approximately March of 1982, of the designation "DOUBLE TREAT" to indicate that a customer can buy two pizzas for a single price, as well as use by the same entity, for a period of two or three months during the summer of 1982, of the designation "TRIPLE TREAT" to indicate that a customer could buy one pizza and get a second one, plus a soft drink, free; use by Marco's Pizza (which has some 29 pizza carry-out and delivery stores), since July 1, 1979, of "DOUBLE" and "DOUBLE DOUBLE" to indicate two pizzas for the price of one, as well as "SINGLE" to indicate one pizza; use by Dino's USA, Inc. (which has approximately 200 pizza stores), since about 1981, of "DOUBLE TOPPER" to indicate a pizza having twice the amount of ingredients that would be found on one pizza, as well as use of the phrase "TRIPLE THE BARGAIN" in conjunction with an offer including free delivery, a free pizza, and a free soft drink; use by the Original Pizza Man, from 1979 to 1986 (when the store ceased to operate), of "DOUBLE PIZZA" to indicate two pizzas for one price; use by Dolly's Pizza (two stores), from about February 1983 until early 1984 (at which time the use was stopped because applicant

9

objected thereto and because the owner of the stores thought of another designation that he liked better), of "PIZZA! DOUBLE!" (or "PIZZA DOUBLE") to indicate two pizzas for one price; use by Tiffany's Pizza, since March 1981, of "DOUBLE DEAL" to indicate two pizzas for the price of one; and use by Double "D" Pizza, from 1973 to 1983, of "DOUBLE DECKER" and "DOUBLE 'D' PIZZA".

These same third-party witnesses offered other testimony which has particular bearing on the issues presented herein. For example, Mr. John Dinsmore, owner of Ann's Party and Pizza Shop, testified on cross-examination (at pages 11-12) that he wouldn't object to a competitor's use of "DOUBLE TREAT" because he did not coin the word "DOUBLE", and is only trying to "describe the situation, this is the type of business that I have, and the type of product that I have, and the fact that I am offering a double for a single purchase. If you wanted to advertise ... double treat pizza, that is fine." Mr. Pasquale Giammarco, owner of Marco's Pizza, testified, in response to a question as to his knowledge of use by others in the food industry of the terms involved herein, as follows (at page 8):

> Like your hamburger places, the word double
> cheeseburger, MacDonald's [sic] uses it,
> Burger King uses it, ... single and double
> items on pizza, somebody says to me give me
> double cheese, double pepperoni, the word
> double is almost everywhere.

10

He also testified that he didn't claim any exclusive rights in the words "SINGLE" or "DOUBLE" standing alone (page 13), and (at page 14) that "everybody has doubles in town, like Little Caesar's and Domino's and Marco's."  Mr. John Ray, franchiser of the Dino's USA, Inc. stores, testified (at pages 8 and 9), that he wouldn't object if a competitor set up a shop next to one of his outlets, and advertised a "DOUBLE TOPPER"; that he doesn't make any claim that "DOUBLE TOPPER" is at all distinctive of Dino's products; and that he thinks the term is self-explanatory.  Similarly, Mr. John Cafarelli, the former owner of Original Pizza Man, and Mr. Robert Lewis, owner of Dolly's Pizza, each testified (at pages 8 and 16 of their depositions, respectively) that he did not claim any exclusive rights to the word "DOUBLE".

The evidence also shows that since 1969, Wendy's International, Inc. has used the terms "SINGLE", "DOUBLE", and "TRIPLE" to describe hamburgers having a single beef patty, two beef patties, and three beef patties, respectively; that Wendy's has no objection to the use of these words by others; and that Mr. Michael Ilitch, President and Chairman of applicant, knew of Wendy's use prior to applicant's first use of the terms (indeed, Mr. Ilitch purchased 11 Wendy's franchises in 1975-76, several years after Wendy's began using

11

the designations descriptively, and a year or two before applicant began using them). Similarly, since 1974 Burger King has used the term "DOUBLE", or "DOUBLES", in phrases promoting the sale of its fast-food items, namely, hamburgers and cheeseburgers. Such uses have included, for example, "DOUBLES ANYONE", "DOUBLE HAMBURGER", "DOUBLE MEAT CHEESEBURGER", "DOUBLE FEATURE", "DOUBLE BEEF", "DOUBLE WHOPPER", "DOUBLE BEEF HAMBURGER", "DOUBLE MEAT", "DOUBLE DELUXE", etc. There is also evidence as to use of the terms "SINGLE", "DOUBLE", and "TRIPLE" by Dairy Queen in connection with its hamburger products, and by Baskin and Robbins (since about the mid-1970's) in connection with ice cream cones having one, two, and three scoops, respectively.[9]

---

[9] Applicant objected, on the asserted ground of irrelevance, to all testimony and other evidence concerning use of the terms "SINGLE", "DOUBLE", and/or "TRIPLE" in connection with food products other than pizza. In support of its objection, applicant relies upon a statement made in the context of the Board's March 12, 1986 ruling on applicant's motion to compel. The statement in question reads as follows:

> The Board agrees with applicant that information concerning third-party uses of the involved marks in connection with food items other than pizza is not relevant to the subject matter of this proceeding.

That statement, made over the signature of a single interlocutory Attorney-Examiner of the Board, is not binding on this three-member panel, and we find ourselves in disagreement with the statement. In this regard, it must be remembered that when ruling on a motion to compel, the Board does not have before it all the facts and circumstances which will be known

Footnote 9 continued on next page.

Finally, the record shows that in November of 1983, applicant filed a civil action against opposer in the United States District Court for the Eastern District of Michigan, Southern Division (Civil Action No. 83 CV 6450 AA), charging opposer with trademark infringement, inter alia. Specifically, in its second amended complaint, applicant alleged, inter alia, use since August 3, 1977 of "DOUBLE" as a trademark in connection with the sale of a pizza having cheese and pepperoni; ownership of a registration upon the Supplemental Register of its asserted mark "DOUBLE" for pizza for consumption on or off the premises; that opposer's use of

---

Footnote 9 continued.
to the Board at the time of final decision after a thorough review of the evidentiary record presented by the parties during their testimony periods. In the present case, based upon our knowledge of the whole record herein, we are of the opinion that evidence showing third-party use of the terms "SINGLE", "DOUBLE", and/or "TRIPLE" in connection with food items other than pizza is indeed relevant to the issues herein, i.e., to the likely purchaser perception of those terms, albeit not as relevant as the evidence of third-party use of such terms for pizza. Cf., for example: In re Wakefern Food Corp., 222 USPQ 76 (TTAB 1984), and Union Carbide Corp. v. W. R. Grace & Co., 213 USPQ 400 (TTAB 1982), affirmed, 221 USPQ 614 (SDNY 1983). Indeed, applicant's president, Mr. Ilitch, testified (at page 26) that he considers "all fast food people ... McDonald's, Wendy's, all of them" to be competitors of his pizza business. Further, even if the evidence in question were to be excluded, the exclusion would not alter our decision in this case.
It should also be noted that other objections raised by the parties during the taking of testimony, but not mentioned in their briefs or at oral hearing, are deemed to have been waived.

13

"DOUBLES" in connection with the offering of pizza constituted an infringement of applicant's rights; and that opposer should be enjoined from using the mark "DOUBLES" or "DOUBLE" or any name including those marks or any colorable imitation thereof. Opposer, in its answer thereto, asserted, inter alia, that "DOUBLE" was a merely descriptive term "which anyone has the right to use in connection with the advertising and sale of food products." Applicant thereafter filed a motion for a preliminary injunction restraining opposer's use of the term "DOUBLES". On April 18, 1984, an evidentiary hearing was held on the motion, during which opposer presented evidence in support of its mere descriptiveness defense. After hearing the evidence, the Court found that applicant's asserted mark "DOUBLE" was descriptive and unenforceable, stating, at pages 93-94 of the hearing transcript:

> I do not think, however, that the mark is a valid mark in that it's descriptive in this sense, and, therefore, in the way it's used and, therefore, it is not one that can be enforced in this case.
> There hasn't been any proof at all of any secondary meaning that's involved in this case that would give it a descriptive mark, a valid, an enforceable right, and so I think you can't protect it in this way.

The motion for a preliminary injunction was accordingly denied, and since applicant's counsel agreed to accept the Court's ruling on the motion as being dispositive of the case on the

14

merits, all counts of the complaint were dismissed with prejudice.

Opposer's standing to bring this proceeding is clear, being evidenced not only by its status as a competitor of applicant in the pizza business, but also by its position as defendant in the civil action, wherein applicant relied on one of the designations now sought to be registered. See: Jewelers Vigilance Committee, Inc. v. Ullenberg Corp., 823 F.2d 490, 2 USPQ2d 2021 (CAFC 1987); Lipton Industries, Inc. v. Ralston Purina Co., 670 F.2d 1024, 213 USPQ 185 (CCPA 1982); and Binney & Smith Inc. v. Magic Marker Industries, Inc., 222 USPQ 1003 (TTAB 1984).

We turn then to the effect in this case of the decision in the civil action. Under the doctrine of claim preclusion (i.e., res judicata) the entry of a final judgment "on the merits" of a claim (i.e., cause of action) in a proceeding serves to preclude the relitigation of the same claim in a subsequent proceeding between the parties or their privies, even in those cases where the prior judgment was the result of a default or consent. See: Lawlor v. National Screen Service Corp., 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); Chromalloy American Corp. v. Kenneth Gordon, Ltd., 736 F.2d 694, 222 USPQ 187 (CAFC 1984); and Flowers Industries, Inc. v. Interstate Brands Corp., 5 USPQ2d 1580 (TTAB 1987).

15

Inasmuch as the claim in the civil action, wherein applicant sought to enjoin opposer's assertedly infringing use of the term "DOUBLES", manifestly was not the same as the claim now presented in this case, wherein opposer has opposed applicant's application to register the term "DOUBLE", inter alia, on the ground of mere descriptiveness, there can be no bar by reason of res judicata.

However, the doctrine of issue preclusion (i.e., collateral estoppel) serves to preclude the relitigation, by the same parties or their privies, of issues actually litigated, and necessarily determined (by a court of competent jurisdiction), in a prior proceeding, whether or not the prior proceeding involved the same claim as the subsequent proceeding. See: Lawlor v. National Screen Service Corp., supra; Chromalloy American Corp. v. Kenneth Gordon, Ltd., supra; Mother's Restaurant Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 221 USPQ 394 (CAFC 1983); and International Order of Job's Daughters v. Lindeburg & Co., 727 F.2d 1087, 220 USPQ 1017 (CAFC 1984). The issue of the descriptiveness of applicant's designation "DOUBLE" for pizza having cheese and pepperoni was actually litigated, and necessarily determined by the court, in the prior proceeding, with the determination being adverse to applicant. Moreover, counsel for applicant admitted, in the prior proceeding, that applicant had not established secondary meaning in the term "DOUBLE", stating, at

16

pages 88-89 of the hearing transcript:

> On the meaning of the secondary meaning,
> that brings us back to the question of
> whether doubling used by Little Caesar's is
> a trademark. If it's only descriptive we
> lose, next case, that's my position.
> We don't claim secondary meaning in the
> sense of double because we don't have
> secondary meaning for any double, we never
> thought we did, the mark as used is
> distinctive of us, it's used for a product.

As indicated above, the court, having found that applicant's

alleged mark "DOUBLE" was descriptive, went on to find that

applicant had failed to prove that the term had acquired

secondary meaning. Under the circumstances, the court held

that the asserted mark was unenforceable. Clearly, the finding

of lack of secondary meaning was also necessary to the court's

decision in the case. Accordingly, under the doctrine of

collateral estoppel, applicant is barred by the decision in the

civil action (issued just six weeks prior to the filing of

opposer's opposition to applicant's application to register the

term "DOUBLE") from asserting herein that the designation

"DOUBLE" is inherently distinctive as applied to its goods, or

that the designation has acquired secondary meaning.[10]

---

[10] Applicant argues that inasmuch as opposer failed to
counterclaim in the civil action for cancellation of
applicant's then already subsisting registrations on the
Supplemental Register of the terms "SINGLE", "DOUBLE", and
"TRIPLE", opposer is barred herein, under the doctrine of res
Footnote 10 continued on next page.

Obviously, this decision is also highly persuasive on the issues of the descriptiveness and acquired distinctiveness of the terms "SINGLE" and "TRIPLE".

Aside from the fact that the court determination is entitled to preclusive effect herein with respect to applicant's application to register the designation "DOUBLE", we fully agree, based on the evidence presented in this proceeding, with the court's finding that the designation "DOUBLE" is merely descriptive as applied to applicant's goods

---

Footnote 10 continued.

judicata, from objecting to the registrations now sought by applicant. In view of the substantive differences between a registration on the Supplemental Register and a registration on the Principal Register, however, it is obvious that applicant's argument is not well taken.

We are also totally unconvinced by applicant's argument that the goods set forth in its application are different from those adjudicated in the civil action and hence that it is not barred by the decision in the civil action from relitigating herein the issue of the descriptiveness of the term "DOUBLE". Neither in its brief nor at oral hearng did applicant explain this argument further. We note that in both cases, the product actually being sold by applicant under the term was and is the same, i.e., pizza having two toppings (cheese and pepperoni). Indeed, applicant's involved application to register the term "DOUBLE" was filed prior to the commencement of the civil action, wherein applicant pleaded use of "DOUBLE" in connection with the sale of a pizza having cheese and pepperoni. Although the identification of goods in the application has a subsequently added limitation as to serving size (a serving size which was available at the time of the civil action), that limitation is not material to the issue of descriptiveness, and applicant cannot avoid the estoppel effect of the decision in the prior civil action by insignificantly changing its identification of goods. Cf. Toro Co. v. Hardigg Industries, Inc., 549 F.2d 785, 193 USPQ 149 (CCPA 1977).

18

and has not become distinctive thereof, and we believe that the designations "SINGLE" and "TRIPLE" are likewise merely descriptive, and have not become distinctive, of applicant's goods. The specimens filed with applicant's applications, and the exhibits introduced in this opposition, clearly show that the term "SINGLE" is used by applicant to designate pizza having a single topping, namely, cheese; "DOUBLE", to designate pizza having two toppings, namely, pepperoni and cheese; and "TRIPLE", to designate pizza having three toppings, namely, cheese, pepperoni, and mushrooms. That is, the designations serve to describe the number of toppings on the pizzas sold thereunder, and there can be no doubt that this significance would be readily apparent to purchasers. Applicant argues that the terms "SINGLE", "DOUBLE", and "TRIPLE" are not merely descriptive, however, because they are used in conjunction with the term "HOME RUN" and thus signify baseball; that is, applicant contends that rather than describing its pizza, these terms serve to identify it in the context of a baseball theme. This argument is not persuasive because what applicant seeks to register herein, and what applicant would be free to use if it obtained the registrations sought, is not the unitary designation "SINGLE, DOUBLE, TRIPLE, HOME RUN", but rather the designations "SINGLE", "DOUBLE", and "TRIPLE", alone, separate and apart from each other and from the term "HOME RUN". Cf.,

19

for example, American Meat Institute v. Horace W. Longacre, Inc., 211 USPQ 712, 723 at headnote 9 (TTAB 1981); Fort Howard Paper Co. v. Marcal Paper Mills, Inc., 189 USPQ 305 (TTAB 1975); and cases cited in the foregoing.

The evidence of descriptive use of the terms "SINGLE", "DOUBLE", and/or "TRIPLE" by third parties in the pizza business in particular and in the fast food field in general serves both to further demonstrate the descriptive significance of these terms, and to defeat applicant's claim of distinctiveness. See: Levi Strauss & Co. v. Genesco, Inc., 742 F.2d 1401, 222 USPQ 939 (CAFC 1984), and Flowers Industries, Inc. v. Interstate Brands Corp., supra. As stated by the Court of Appeals for the Federal Circuit in the former case, at pages 940-941,

> When the record shows that purchasers are confronted with more than one (let alone numerous) independent users of a term or device, an application for registration under Section 2(f) cannot be successful, for distinctiveness on which purchasers may rely is lacking under such circumstances.

Although the evidence of third-party use of the terms "SINGLE" and "TRIPLE" is not nearly as extensive as that relating to the term "DOUBLE", such evidence, when considered together with the highly descriptive nature of the terms and the fact that applicant's sales and advertising efforts under these two terms have been considerably less than under the term "DOUBLE", is

20

more than sufficient to lead us to conclude that opposer has shown, by a preponderance of the evidence, that the terms have not become distinctive of applicant's goods.

Applicant argues, in effect, that because opposer itself once used the trademark symbol "TM in a circle" in conjunction with the terms "DOUBLES" and "TRIPLES" in advertising its pizza, opposer is estopped from asserting herein that applicant's designations "SINGLE", "DOUBLE", and "TRIPLE" are merely descriptive terms which do not function as trademarks. Mr. Thomas Krips, National Director of Administrative Services for opposer, testified that the early use of the trademark symbol in opposer's advertising was the result of unauthorized overzealousness on the part of opposer's advertising agency, rather than a conscious attempt by opposer to assert trademark rights in the terms "DOUBLES" and "TRIPLES". In any event, even if opposer once considered the terms "DOUBLES" and "TRIPLES" to be trademarks of opposer, the fact that opposer once indicated a different opinion than it now maintains would simply be one fact to be considered, together with all of the other facts of record (which, in our opinion, would far outweigh this one "fact"), in our determination of this case. See: Interstate Brands Corp. v. Celestial Seasonings, Inc., 576 F.2d 926, 198 USPQ 151 (CCPA 1978).

21

In summary, we conclude that the final determination in the prior civil action between the parties, wherein the term "DOUBLE" was found to be descriptive of applicant's goods and not to have become distinctive thereof, is entitled to preclusive effect herein on the issues of the descriptiveness and acquired distinctiveness of that same term; and that in any event, opposer has shown by a preponderance of the evidence that the terms "SINGLE", "DOUBLE", and "TRIPLE" are merely descriptive of applicant's goods and have not become distinctive thereof.

Decision:

The three oppositions are sustained, and registration is refused to applicant in each instance.

J. E. Rice

L. E. Rooney

E. J. Seeherman
Members, Trademark
Trial and Appeal Board

APR 29 1988

22