THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
March 26, 2013

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Sela Products, LLC
_____

Serial No. 77629624
_____

Ryan L. Lobato of McAfee & Taft for Sela Products, LLC.

Daniel Capshaw, Trademark Examining Attorney, Law Office 110 (Chris A.F. Pedersen, Managing Attorney).
_____

Before Seeherman, Zervas and Shaw, Administrative Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

Sela Products, LLC has applied to register the mark FORZA, in standard characters, for goods ultimately identified as:

> Metal mounting brackets for speakers, metal wall and ceiling television/display mounts, metal satellite mounting brackets/bases (Class 6); and

> Custom audio/video installation and accessory items, namely, speakers, speaker enclosures, speaker systems, cable connectors and adapters, audio interconnect and adapter cables, video interconnect and adapter cables, speaker wire, coaxial cable, communication cable, optical cable, computer cable, signal splitters, light

dimmers and home automation control modules, audio/video/home automation touch pads and panels, signal grounding devices, coaxial cable clips, satellite multi-switches, remote controls for audio/video and home automation devices, television antennas, coaxial cable boots, audio video selectors, audio video distribution devices, audio video multi-zone controllers, modular wall jacks and wall switch plates, volume, controls, speaker switchers, infrared controls, infrared receivers and emitters, infrared repeaters and extenders (Class 9).[1]

In the initial application applicant offered the following translation statement:

The foreign wording in the mark translates into English as force.

Registration has been refused on the ground that applicant's mark so resembles the following registered marks, owned by two different entities, that if it is used in connection with applicant's identified goods, it is likely to cause confusion or mistake or to deceive.[2]

Registration No. 3503756, issued September 23, 2008, for FORZA POWER TECHNOLOGIES in standard characters for "automatic voltage regulators,

---

[1] Application Serial No. 77629624, filed December 9, 2008, based on Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b) (intent-to-use).

[2] The examining attorney had also refused registration on the basis of likelihood of confusion with Registration No. 1195600 for FORCE for loudspeakers, and applicant and the examining attorney addressed this refusal in their briefs. The registration was due for renewal at the point that the appeal was ready for decision; therefore, in accordance with Board policy, proceedings in the appeal were suspended until it could be determined whether the registration would be renewed. See TBMP § 1213 (3d ed.rev. 2012). The registration has expired, and it therefore no longer forms a basis for refusal of applicant's application.

uninterruptible power supplies, surge protectors, rechargeable batteries, and battery chargers, all for home and office use only." The words POWER TECHNOLOGIES are disclaimed. The registration includes the translation statement: The foreign wording in the mark translates into English as FORCE.

Registration No. 3790307, issued May 18, 2010, for FORZA MILAN! and design, shown below, for a variety of goods and services in five classes, including optical cables, electric cables and apparatus for recording, transmission or reproduction of sound or images.[3] The registration includes the statements, "The English translation of 'FORZA' in the mark is GO!" and "The colors red, black, orange and white is/are claimed as a feature of the mark." The registration also includes a disclaimer of 1899 and MILAN.



Procedural Matters

Before we consider the substantive issues in this appeal, there are some procedural points that we must address. In its appeal brief, applicant asserts that certain statements were made by the owner of Registration

---

[3] The registration includes goods and services in Classes 9, 16, 24, 25 and 41. Because the examining attorney has highlighted the goods we have listed above, we see no need to recite all of the goods and services in the registration; clearly such items as cash registers, trading cards, textile napkins and soccer shorts and services such as soccer camps are not relevant to the likelihood of confusion ground.

No. 3503756 for FORZA POWER TECHNOLOGIES during the prosecution of its underlying application. The examining attorney has objected to these statements because the registration file was never made of record. In its reply brief applicant has made several arguments about why these statements should be considered. Applicant analogizes this situation to that of an opposition, and refers to the rule that the file of an application that is the subject of a Board inter partes proceeding is of record without any action by the parties. See Trademark Rule 2.122(b). Applicant contends, "The Examining Attorney functions as a quasi-opposer and has introduced registration 3103903 [sic] as being confusingly similar.[4] An opposer would not be permitted to avoid damaging material in the application file because the application had not been made of record."

Thus, we construe the instant applicant's argument as contending (1) that if the owner of the FORZA POWER TECHNOLOGIES mark were an opposer relying on that registration, then that registration would be considered of

---

[4] As a point of clarification, applicant has misspoken in stating that the examining attorney has introduced Registration No. 3103903 as being confusingly similar. That registration had been cited against the application that ultimately issued as Registration No. 3503756 for FORZA POWER TECHNOLOGIES, and the statements that applicant wishes to rely on were made by the FORZA POWER TECHNOLOGIES applicant in attempting to overcome the citation of Registration No. 3103903.

record in the opposition, and (2) the examining attorney in this case, having cited that registration against applicant, must be considered the equivalent of an opposer, and the cited registration therefore must be considered to be of record for purposes of the instant appeal.

We are not persuaded by applicant's arguments. First, there is no equivalent rule for ex parte proceedings that makes the file of a cited registration of record; and there are numerous cases in which the Board has refused to take judicial notice of records residing in the Patent and Trademark Office. In re Jonathan Drew, Inc., 97 USPQ2d 1640, 1644 n. 11 (TTAB 2011). Second, an ex parte appeal is not analogous to an opposition, for many reasons which we need not detail here. However, if we were to consider the examining attorney "as a quasi-opposer," we point out that the file of an opposer's pleaded registration is not automatically part of the opposition record, but must be made of record. See Trademark Rule 2.122(d), which sets forth the procedures by which a registration of the opposer in an opposition may be made of record. Thus, applicant's analogy fails and applicant's comment that TBMP § 704.03(a) "admits the application files raised by opposing parties before the Board", reply brief, p. 3, is incorrect.

5

Applicant also points to the provision in the TBMP stating that "the Board generally takes a somewhat more permissive stance with respect to the introduction and evaluation of evidence in an ex parte proceeding than it does in an inter partes proceeding." TBMP § 1208. The next sentence explains, "That is, in an ex parte proceeding the Board tolerates some relaxation of the technical requirements for evidence and focuses instead on the spirit and essence of the rules of evidence." In other words, the Board does not, in ex parte appeals, strictly apply the Federal Rules of Evidence, as it does in inter partes proceedings. However, regardless of the fact that Fed. R. Evid. 201(c)(2) requires that the party desiring a tribunal to take judicial notice supply the material to the tribunal, it is simply common sense to do so; an applicant cannot simply contend that certain statements were made in material that has not been provided, and expect the Board to consider the contention established.

This same reasoning applies to applicant's argument that "it would be unfair to allow the Examining Attorney to assert that a registration is highly relevant while simultaneously refusing to consider statements made by the owner of the cited registration." Reply brief, p. 3. We see no unfairness to applicant. Applicant could have

6

submitted the file of the cited registration, and the Board would have considered it. However, applicant did not do so, and we see no unfairness in refusing to consider alleged "evidence" that was not made of record.

In addition, even if the statements applicant asserts were made by the owner of the cited registration were considered, it would not change our decision herein. Applicant relies on the statements the then-applicant for FORZA POWER TECHNOLOGIES made in trying to overcome a citation of FORZA for "hydrogen fuel cell power generator." Such statements cannot be viewed as binding judicial admissions, since a decision maker may not consider a party's opinion relating to the ultimate legal conclusion of likelihood of confusion (particularly in another case) as a binding admission of a fact. See Interstate Brands Corp. v. Celestial Seasonings, Inc., 576 F.2d 926, 198 USPQ 151, 154 (CCPA 1978) ("that a party earlier indicated a contrary opinion respecting the conclusion in a similar proceeding involving similar marks and goods is a fact, and that fact may be received in evidence as merely illuminative of shade and tone in the total picture confronting the decision maker."). The owner of Registration No. 3503756 for FORZA POWER TECHNOLOGIES made its statements in the context of the citation of FORZA for

7

a hydrogen fuel cell power generator, goods which are very different from those at issue herein, and therefore its statements cannot be treated as indicating its position with respect to applicant's mark and goods in this appeal.

There is a second procedural point that we must address before considering the merits of the appeal. With its appeal brief applicant has attached approximately fifty pages of exhibits. The Board frowns on an applicant or, for that matter, an examining attorney, attaching such a large number of exhibits to a brief. The application file is before the Board when it decides an appeal, and there is no need to resubmit materials that are already in the file. See In re SL&E Training Stable Inc., 88 USPQ2d 1216, 1220 n. 9 (TTAB 2008) ("When considering a case for final disposition, the entire record is readily available to the panel. Therefore, attaching exhibits that are already of record only adds to the bulk of the file.") It is of far more utility to the Board for the applicant and examining attorney to provide citations directly to the record and, when there are a large number of attachments to an Office action or response, to the specific page number where the attachment may be found.

Turning from applicant's brief to the examining attorney's, we note that in the Office's TTABVUE database

the brief filed by the examining attorney has thirty pages. Trademark Rule 2.142(b)(2) provides that, without prior leave of the Board, an appeal brief may not exceed twenty-five pages in length. We have confirmed that the brief that was prepared by the examining attorney complied with this page limitation, but when the brief created in a word processing application was uploaded into the TTABVUE database and rendered into an image-based document, the pagination was changed.[5] Accordingly, we have considered the brief as complying with the page limits for an appeal brief.

Likelihood of Confusion

Our determination of the issue of likelihood of confusion is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). See also, In re Majestic Distilling Co., Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003).

We will consider the issue of likelihood of confusion with respect to each cited registration in turn.

---

[5] This issue occurs only with the uploading of examining attorney briefs. Papers filed by applicants, or by parties in inter partes proceedings, whether in paper form or through the Board's ESTTA electronic filing system, appear in TTABVUE the same way that they look when they are submitted.

Registration No. 3503756 for FORZA POWER TECHNOLOGIES

It is a well-established principle that, "in articulating reasons for reaching a conclusion on the issue of likelihood of confusion, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on a consideration of the marks in their entireties."  In re National Data Corp., 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).  In this case, we find that FORZA is the dominant part of the registrant's mark.  The words POWER TECHNOLOGIES, which have been disclaimed, are descriptive because the goods involve power technologies, that is, technical components that are used in the provision of power to electrical devices.  Accordingly, consumers will look to FORZA as the source-identifying part of the mark.  As a result, when the marks are considered in their entireties, they are similar in appearance, pronunciation, connotation and commercial impression.

In reaching this conclusion, we have considered all of applicant's arguments to the contrary, whether or not we repeat them here.  To address two, applicant points out that applicant's mark is one word and has two syllables, while the registrant's mark has three words and eight

10

syllables. Applicant also asserts that the "meaning and connotation" of the marks differ because the registrant's mark "conveys a technology-related connotation" and applicant's mark does not. Brief, pp. 11 and 12. We agree that the marks have a different number of words and syllables because, in addition to the word FORZA that is common to both marks, the registrant's mark includes POWER TECHNOLOGIES, and we accept that consumers will understand the words POWER TECHNOLOGIES as applicant contends. However, these distinctions between the marks that applicant points out do not serve to distinguish them. The term FORZA is still recognizable as a separate word in the registrant's mark; the additional words in the mark do not take away from the dominant presence of FORZA as the first word in the mark and the element with source-identifying significance. Further, although consumers may note the additional words POWER TECHNOLOGIES in the registrant's mark, they are likely to view the marks FORZA and FORZA POWER TECHNOLOGIES as variations of a single party's marks, and consider that the words POWER TECHNOLOGIES were included in that particular mark to describe the goods with which that mark is used.

Turning next to the goods, "it is not necessary that the goods or services be identical or even competitive in

nature in order to support a finding of likelihood of confusion, it being sufficient that the goods or services are related in some manner and/or that the circumstances surrounding their marketing are such that they would be likely to be encountered by the same persons under circumstances that would give rise, because of the marks employed thereon, to the mistaken belief that they originate from or are in some way associated with the same producer." In re Home Builders Association of Greenville, 18 USPQ2d 1313, 1317 (TTAB 1990).

The examining attorney has focused on the similarity of applicant's cables, wires and other audio/video accessories with the "surge protectors" in the cited registration, and we will therefore do the same. See Tuxedo Monopoly, Inc. v. General Mills Fun Group, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981) (likelihood of confusion must be found if there is likely to be confusion with respect to any item that comes within the identification of goods in the application).

The examining attorney has submitted pages from the registrant's website showing that registrant offers surge protectors specifically advertised for home theater, stereo equipment, audio/video equipment such as TVs, DVD players

12

and sound systems, entertainment systems, coaxial antenna and satellite.

The examining attorney also submitted pages from a large number of third-party websites advertising both surge protectors and the types of audio and video accessories identified in applicant's application.  Further, many of these websites highlight that the surge protectors are for use with audio and video equipment:

> The Monster website, www.monstercable.com, features the "Monster FlatScreen PowerProtect 200," a surge protector for flatscreen televisions and coaxial cable connection ("2 AC outlets for AC surge protection and 1 pair coaxial connections for cable TV/satellite TV/HDTA surge protection") and the "Audio/Video Power Center AV800 with Surge Protection," advertised to protect "audio video components", www.monstercable.com.[6] pp. 8, 12.  This same website also features various connectors for audio and video equipment, e.g., coaxial video for connections for over-the-air television and digital cable and satellite broadcast, p. 15; speaker cable, p. 16; F-pin connectors for video cable, p. 18; as well as speaker switches p. 22; splitters for CATV signals, p. 24; cables for connections to HDTV or AV receivers, p. 24.  All of these goods are offered under the trademark MONSTER.
>
> The Belkin website, www.belkin.com, features surge protectors as well as connectors for video and audio p. 37, audio video cables, digital optical audio cables, audio splitters, p. 39 and digital coaxial audio cable, p. 42.  These goods are offered under the trademark BELKIN.

---

[6]  The page numbers indicated in all of the websites refer to the pages of attachments to the January 31, 2011 Office action.

The Rocketfish website,
www.rocketfishproducts.com, shows surge
protectors as well as, e.g., in-wall cable,
digital coaxial audio cable, p. 69 and speaker
cable banana plugs, p. 73. In addition, it
features various wall mounts for flat-panel
televisions. p. 65. These items are featured in
a "Home Theater" section of products, and one of
the surge protectors is captioned "7-Outlet Home
Theater Surge Protector." p. 67.

The Leviton website, www.leviton.com, shows surge
protectors, p. 76, and various audio/video cables
and accessories, including coax cable clips,
p. 78, speaker wire, p. 82, audio/video
connectors, p. 84, and speakers for music and
home theater. p. 89.

The website for Manhattan Products,
www.manhattan-products.com, features a MANHATTAN
surge strip that is advertised as being for,
inter alia, media/entertainment centers. p. 107
This same website also features MANHATTAN
audio/video cable, p. 104, speakers, p. 105 and
video splitters. p. 102.

The JDI Technologies website,
www.goldxproducts.com, shows surge protectors,
audio cable with connector, digital coaxial audio
cable, p. 114, and video cable, p. 116, all
offered under the GoldX mark.

The Tripp-Lite website, www.tripplite.com, shows
surge suppressors specifically advertised for use
with audio/video components, including
entertainment centers. The site also features
audio/video switches and splitters, p. 126,
cables and adapters. p. 124.

Further supporting the above evidence that surge
protectors, audio and video cables and other audio and
video accessories may be sold under a single mark are
third-party registrations showing that a single mark has

14

been adopted for such goods. See, for example, Registration No. 3330797 for, inter alia, audio speakers, custom speakers, audio speaker signal cables and surge protectors; Registration No. 3221328 for, inter alia, speaker systems, audio and video cables, loudspeakers and surge protectors; and Reg. 3301972 for, inter alia, surge protectors, audio and video electrical cables, coaxial cables, electrical connectors. Third-party registrations which individually cover a number of different items and which are based on use in commerce serve to suggest that the listed goods and/or services are of a type which may emanate from a single source. See In re Albert Trostel & Sons Co., 29 USPQ2d 1783 (TTAB 1993).

The evidence of record shows that goods such as cable connectors and adapters, and coaxial cable, i.e., goods of the type identified in Class 9 of applicant's application, and surge protectors, are offered by the same companies, under a single mark, and are advertised as being used together. We find that the du Pont factor of the similarity of the Class 9 goods and the registrant's goods favors a finding of likelihood of confusion.

As for the similarity of applicant's goods in Class 6 (metal mounting brackets for speakers, metal wall and ceiling television/display mounts, metal satellite mounting

15

brackets/bases) and the registrant's surge protectors, the examining attorney has made of record two third-party registrations:  Registration No. 3095378 for, inter alia, mounting brackets for loudspeakers and surge protectors; and Reg. 3301972 for, inter alia, home and home theater products and accessories, namely speaker mounting devices, and surge protectors.[7]  In addition, the following websites show both mounts for televisions and speakers and surge protectors:  Rocketfish (cited above), which offers wall mounts or brackets and surge protectors under the mark ROCKETFISH; Dynex, www.dynexproducts.com, which offers surge protectors, including those for home theaters, p. 148, and speaker wall mounts, p. 150, under the mark DYNEX; and Leviton (cited above) which shows surge protectors and speakers with mounting brackets.

The foregoing evidence is not as substantial as that showing the relatedness of applicant's Class 9 goods to the registrant's identified surge protectors.  However, the evidence also shows the complementary nature of the goods, with surge protectors being marketed specifically for audio and television and home theater equipment, and wall mounts and brackets being used for the same purpose, such that a

___

[7]  This registration was also cited above to show relatedness between surge protectors and speaker systems, audio and video cables, and loudspeakers.

16

purchaser can encounter both types of goods in the course of purchasing a television, audio or home theater system. Accordingly, the combination of the website evidence which shows that a single mark is used for the goods, and the third-party registration evidence showing that two other companies have adopted a single mark for such goods, as well as the complementary nature of the goods, is sufficient to show that the goods are related.

Applicant has not argued that the goods are not related, but has argued that the channels of trade/classes of consumers are different. Noting that the registrant's goods are limited to "for home and office use only," and that applicant's goods in Class 9 are described as "custom audio/video installation and accessory items," applicant argues that the general public would be the purchasers of the registrant's goods, while applicant's goods would be "sold to professional *custom installation* specialists and commercial contractors--not private consumers--for use in creating and installing interactive communication infrastructure automating processes such as light control, security, networking, and audio/video systems within a building." Brief, pp. 13-14, emphasis in original.

First, applicant's goods are not restricted to sales to custom installation specialists and commercial

17

contractors, nor are they limited to use in the communication infrastructure that applicant describes. Although applicant's identification recites that the goods are custom installation items, this does not mean that a do-it-yourselfer could not purchase the items to install speakers or a home theater system. However, even if we were to accept applicant's position that its goods would be sold only to custom installation specialists and commercial contractors, commercial contractors must still be considered purchasers of surge protectors such as those identified in the registration. Although the registrant's goods are identified as being "for office and home use only," that does not mean that the direct purchasers of the goods would be limited to homeowners and office workers. Contractors could certainly do work on homes and offices, and as part of installing the custom installation items identified in applicant's application, could purchase surge protectors for use with such goods. To the extent applicant may be suggesting that, because contractors would not be the "home users" of the goods they install, they are not purchasers of surge protectors "for home and office use only," we reject that argument.

Further, applicant's goods in Class 6 have no limitation as to "custom installation" items, and items

18

such as wall mounts and brackets could be purchased by homeowners as well as contractors; both classes of purchasers are also purchasers of surge protectors.

Thus, we must treat the channels of trade for applicant's goods in Classes 6 and 7, and the channels of trade for the registrant's goods, as legally the same.

We acknowledge that, as far as contractors are concerned, they must be considered to be more sophisticated about their industry and goods than the general public. However, in view of the evidence that companies sell the goods identified in both classes of applicant's application, and surge protectors, under the same mark, their knowledge of the industry would reinforce their belief that the goods emanate from the same source if they were sold under confusingly similar marks. And, for the reasons discussed above, the marks are confusingly similar. Although we accept that contractors will note the additional words POWER TECHNOLOGIES in the registrant's mark, the presence of the words in the registrant's mark, or the absence of the words in applicant's mark, do not distinguish the marks. Rather, as we have said, the purchasers will regard the additional words, when used for surge protectors, as having been added to describe those particular goods.

The next du Pont factor that applicant has addressed is that of the scope of protection to be accorded the registered mark. Applicant has submitted a number of third-party registrations in order to show that the registered mark is weak. However, there are only two registrations for FORZA marks, and they are for different goods from those at issue herein. Registration No. 3103903 is for FORZA for hydrogen fuel cell power generators, and Registration No. 3828301 is for FM FORZA MOTORSPORT for video game accessories. As for the other third-party registrations, they are for marks containing the words FORCE or FORTE and, as applicant argued in connection with the now-moot citation of Registration No. 1195600 for FORCE, these words cannot be considered direct equivalents of FORZA. Although in determining the strength of the mark third-party registrations can be used in the same manner as dictionary definitions, to show that a term has a significance in a particular industry, we cannot conclude, on the basis of the two FORZA registrations, that FORZA has a particular significance for the registrant's goods. Thus, we find that the scope of protection to which the cited registration is entitled extends to prevent the registration of FORZA for the goods at issue herein.

Neither applicant nor the examining attorney have discussed any other du Pont factors and, to the extent that any are relevant, we treat them as neutral.

For the reasons discussed above, we find that applicant's mark for at least some of the goods identified in each class of its application is likely to cause confusion with Registration No. 3503756 for FORZA POWER TECHNOLOGIES, and affirm the refusal of registration.

Registration No. 3790307 for FORZA MILAN! and design

For ease of reference, this is the cited mark:



The examining attorney contends that FORZA is the most distinctive and dominant portion of the mark, that ACM is very small in relation to the word FORZA, that MILAN! will be understood to be the geographic location of the company that makes the goods and/or the place that the goods are made, and that, in any case, this word, as well as 1899, are disclaimed. Further, the examining attorney asserts that the design element does not distinguish the marks because, "when a mark consists of a word portion and a design portion, the word portion is more likely to be

impressed upon a purchaser's memory and to be used in calling for the goods and/or services; therefore, the word portion is normally accorded greater weight in determining whether marks are confusingly similar." Brief, unnumbered page 8. Applicant, on the other hand, has explained that the cited mark contains the crest of the Italian soccer team Associazione Calcio Milan, which is known as "ACM" for short. Applicant has explained that this team has won numerous international soccer titles, and has won more world soccer titles than any other club in the world. The registration contains a translation statement for FORZA as meaning "Go!," so the meaning of the entire phrase would be in the nature of a cheer, "Go Milan!" Based on the information of record, we have no doubt that those who are familiar with world soccer would recognize this mark as connoting the Italian soccer club, and would readily distinguish it from applicant's mark FORZA.

We also find that the marks are distinguishable even for those who are unaware of the soccer meaning of the registered mark. The word MILAN appears in the largest letters in the mark and is followed by an exclamation point; although the examining attorney states that consumers would regard MILAN as the geographic location of the FORZA company (giving the analogy of MARC NEW YORK or

LOUIS VUITTON PARIS), brief, p. 8, this is not the manner in which a geographic location of a company is normally shown in a mark. Thus, we do not consider FORZA to be the dominant part of the mark; rather, consumers will see it as part of the phrase FORZA MILAN! For those who know Italian, this phrase, with the exclamation point, will be understood as "Go Milan!" and therefore this mark and FORZA by itself have different connotations and commercial impressions. As for those who are not soccer aficionados or do not know Italian, the phrase FORZA MILAN!, with the imperative connotation of the exclamation point, will still be recognized as different from FORZA. Further, although in general words dominate over designs, in the registrant's mark the design element is large and noticeable, and it also includes literal elements. Accordingly, when the marks are compared in their entireties, we find that the differences in appearance and commercial impression (and connotation for those who are aware of the soccer team or know Italian) of the marks outweigh any similarities due to the presence in both marks of the word FORZA.

Because we find that the dissimilarity of the marks in their entireties makes it unlikely for confusion to result from applicant's use of its mark, we need not discuss the other du Pont factors. See Kellogg Co. v. Pack'em

23

Enterprises Inc., 951 F.2d 330, 21 USPQ2d 1142, 1145 (Fed. Cir. 1991) (a single <u>du Pont</u> factor, the dissimilarity of the marks, may be dispositive).

<u>Decision</u>

The refusal on the basis of Registration No. 3503756 is affirmed; the refusal on the basis of Registration No. 3790307 is reversed.